## MATTER OF JANCAR

### In Visa Petition Proceedings

### A–13512978

*Decided by Board November 2, 1965*

Since under the law of Yugoslavia an illegitimate child may be legitimated by acknowledgment of the natural father, a child born out of wedlock in 1944 in Yugoslavia, whose birth certificate establishes such acknowledgment in 1944 and reflects confirmation by her mother of the statement of acknowledgment, is, in relation to her natural father, a child within the meaning of either section 101(b)(1)(A) or (C) of the Immigration and Nationality Act, as amended, and is, therefore, eligible for preference quota status under section 203(a)(3) of the Act.

The case comes forward on appeal from the order of the District Director, Cleveland, Ohio, dated May 18, 1965, denying the visa petition for the reason that an illegitimate child derives no status, privilege or benefit under the Immigration and Nationality Act from or through the relationship of the child to its putative father.

The petitioner, a native and citizen of Yugoslavia, a permanent resident alien since December 28, 1950, 52 years old, male, seeks preference quota status under section 203(a)(3) of the Immigration and Nationality Act on behalf of his unmarried illegitimate daughter, a native and citizen of Yugoslavia, 21 years old. In support of the visa petition there has been submitted a Yugoslavian birth certificate showing the beneficiary's mother as Matilda Jancar and bearing a notation that the petitioner on July 14, 1944 signed a statement at the local Youth Center in the district of Radgona that he is the child's father and that the child's mother confirmed the statement. In connection with the appeal the petitioner states at the time of his daughter's birth, he was threatened with mobilization into the German Army and was in hiding. In 1945, fearing Communist persecution he fled the country never to return again, thus preventing him from marrying his daughter's mother. He states that he brought the beneficiary here as soon as he was comfortably settled and had his own home; that the beneficiary is his only heir and he has willed all his estate to her.

On the date of October 1, 1965 the District Director, Cleveland District, after reference to material furnished by the Library of Congress dated September 3, 1965 has concluded that no change should be made in his original decision. He concludes "a status similar to that of a child born in wedlock" would not appear to meet the demands of "definitions" with reference to the requirements of section 101(b)(1)(A) nor have the requirements of section 101(b)(1)(C) with reference to custody been met as the subject was not in custody of the legitimating parent until after her eighteenth birthday since the beneficiary's only entry into the United States on December 10, 1964 was effected when she was 20 years of age. The issue then is whether the act of acknowledgment of paternity by the father legitimated the beneficiary under Yugoslavian Law.

The file contains a report dated September 3, 1965, entitled "Acknowledgment and Legitimation of a child born out of wedlock under Yugoslav Law," prepared by a Doctor Fran Gjupanovich, of the European Law Division of the Library of Congress. We shall deal with the pertinent portions of this report.

The new socialist system introduced in Yugoslavia by the 1946 Constitution paid special attention to children born out of wedlock. Under the Constitution of 1946, Article 26, as well as under that of 1963, Article 58, now in force, children born out of wedlock are considered equal to those born in wedlock with respect to their rights and duties toward their parents and the rights and duties of the parents toward them. The term "legitimate" and "illegitimate" are no longer used in domestic relations legislation. In order for a child born out of wedlock to realize its rights, its extramarital paternity must be established. This may be effected either through a voluntary acknowledgment of paternity or through a court action declaring it. The principle governing the status of a child born out of wedlock has been fully implemented by the Law of December 1, 1947, on Parent and Child Relations.

Acknowledgment as an institution creating rights and duties between a child and the natural father, as established in the 1947 Law, was unknown under the Austrian Civil Code of 1811 which dealt only with the evidence in proving extramarital paternity for the sole purpose of the child's support. The provisions of the Austrian Civil Code of 1811 were repealed by the enactment of the 1947 Law on Parent and Child Relations. Pursuant to section 43 of the same Law, the provisions of this Law were also to apply to cases involving parent and child relations which had arisen before the coming into force of the said Law, provided, however, no final decision was rendered before the 1947 Law became effective. The provi-

sions on legitimation under the Austrian Civil Code of 1811 and under the 1947 Law on Parent and Child Relations both provided for legitimation, under certain circumstances, either by the subsequent marriage of the parents or by court decree, the illegitimate child thereby acquiring the status of a child born in wedlock.

The 1947 Law provides that the establishment of paternity is admissible and that extramarital paternity may be established by the voluntary acknowledgment of the natural father or in a court action by final decree (sections 4 and 24). The person who admits that he is the father of a child born out of wedlock is considered as such (section 24, paragraph 1). Acknowledgment of paternity on the part of the father is a unilateral act which becomes effective when the child's mother agrees to it (section 24, paragraph 3). Acknowledgment of paternity, in order to be effective, must be made in a form prescribed by law. Therefore, the father may acknowledge the child either before a registrar, in a public document, or in his will (section 24, paragraph 2). The 1947 Law requires no other formality for the acknowledgment before the registrar. According to an authority, the father makes the statement of acknowledgment personally before the registrar, either immediately after the birth of the child or at any time later. The registration in the public records of births is conclusive evidence of the acknowledgment and is irrevocable.

Acknowledgment of paternity has retroactive effect and is effective with respect to everyone. Family relations thenceforth exist between the child and the natural father. Both the father and the mother exercise parental power over the child. The child acquires the family name of its mother, but it may take that of its father provided the parents agree upon it.

In summary, under the law now in force in Yugoslavia, a child born out of wedlock may acquire the status or a status similar to that of a child born in wedlock by three methods, i.e., legitimation by subsequent marriage, by court decree, or by acknowledgment of the natural father. A child born out of wedlock before the enactment of the 1947 Law on Parent and Child Relations may be acknowledged only in accordance with the provisions of this Law if no final decree on the matter was rendered before the 1947 Law became effective. The report concludes that it is not possible to find any cases or authoritative comment on how today's Yugoslav courts would specifically interpret the rights and duties arising from an acknowledgment under the old law. There is, however, case law which shows an inclination on the part of present-day courts to

adjudicate under the 1947 Law the content of parent and child relations which were formalized under the old law.

It therefore appears from the report of the Library of Congress that under the law now in force in Yugoslavia, a child born out of wedlock may acquire the status or a status similar to that of a child born in wedlock by three methods: legitimation by subsequent marriage; court decree; and by acknowledgment of the natural father. The Service has seized upon the phrase "status similar to that of a child born in wedlock" in order to predicate its denial. An examination of the report indicates that this phrase was inserted only because the inheritance rights of an acknowledged child as compared to a child born in wedlock may differ in the various Yugoslav jurisdictions. However the report reiterates several times that legitimation through acknowledgment of paternity is effective with respect to everyone; that family relations thenceforth exist between the child and the natural father; and that both the father and the mother exercise parental power over the child. Summarizing, the report concludes acknowledgment by the natural father is one of the three methods of legitimation of a child born out of wedlock the other two being subsequent marriage of the parents or court decree.

The birth certificate establishes that the father acknowledged the child on July 14, 1944 and that the child's mother confirmed the statement of acknowledgment. It therefore appears that ever since the beneficiary was five months old, the petitioner has regarded her as his child. The beneficiary appears to meet the requirements of either section 101(b)(1)(A) or (C) of the Immigration and Nationality Act.[1] Under the Yugoslav Law, the beneficiary is the legitimate child of the petitioner. The appeal will be sustained and the petition approved.

ORDER: It is ordered that the appeal be sustained and the petition be approved for preference quota status under section 203(a)(3) of the Immigration and Nationality Act.

---

[1] Similar conclusions were reached after the introduction of the Communist or Socialist systems in the following cases: *Matter of Gallina*, 9 I. & N. Dec. 518 (1961)—Hungary; *Matter of Krzyewski*, 8 I. & N. Dec. 73 (1958)—Poland; unreported *Matter of Pajor*, A-14492231 (March 18, 1965)—Rumanian.