MATTER OF KWAN

In Visa Petition Proceedings

A-17962954-6

*Decided by Board May 9, 1969*

Where petitioner, a native of China, was married according to Chinese law and custom in China in 1921, in 1935 and in 1939 to three different persons; maintained and supported each woman in a separate household; was domiciled in Hong Kong at the time of the birth there of beneficiaries to his third wife in 1956 and 1957, the legitimacy of the children is determined by the applicable law of Hong Kong, namely, Chinese law and custom, which recognizes concubinage and under which the children of a secondary wife are treated as lawful children. Hence, beneficiaries are the legitimate children of petitioner and are entitled to preference classification under section 203(a)(2) of the Immigration and Nationality Act, as amended.

ON BEHALF OF PETITIONER:   Z. B. Jackson, Esquire
                                  580 Washington Street
                                  San Francisco, California 94111

The matter comes up on certification from the District Director, who, on August 16, 1968, approved the visa petitions filed pursuant to section 203(a)(2) of the Immigration and Nationality Act. Petitioner, a 64-year-old male, married, native and citizen of China and permanent resident of the United States, seeks second preference classification for his two minor daughters. The beneficiaries were born on March 9, 1956, and April 4, 1957, in Hong Kong and currently reside there. The record reflects that petitioner married one Fong Fung Bo on August 10, 1921 in China. He also married Tam Yee Chong on June 6, 1935 and Cheng Wai Ying on January 6, 1939, in China. His first wife died in Hong Kong on January 13, 1965. The second wife immigrated to the United States and currently resides here. The third wife, mother of the beneficiaries, is presently living in Hong Kong. In a sworn statement, petitioner stated that he married each of the three women according to Chinese law and custom. Petitioner

further stated that he maintained each woman in a separate household and supported all three households.

The District Director concluded that the beneficiaries were petitioner's legitimate children. Relying upon a memorandum supplied by the Library of Congress, the District Director based his conclusion on Article 1066 of the Chinese Civil Code of 1931 which provides:

A child born out of wedlock who has been acknowledged by the natural father is deemed to be legitimate; where he has been maintained by the natural father, acknowledgement is deemed to have been established.

The Service questions the use of Article 1066 of the Chinese Civil Code of 1931 as the *lex loci celebrationis*. It argues that the Civil Code of 1931 abolished concubinage and that, therefore, the beneficiaries' mother cannot be considered petitioner's concubine under the 1931 Code. The Service states that the Chinese law applicable in Hong Kong is the Chinese customary law existing in 1843 (Ta-Tsing—lü li) and that Hong Kong does not recognize the 1930 or 1950 modifications in Chinese law. It is argued that under the Ta-Tsing—lü li, the taking of a concubine involved a formal ceremony with the introduction of the concubine into her husband's household. The Service contends that by maintaining three separate households, the petitioner entered into three bigamous marriages, rather than concubinages. The Service then urges us to apply English law of Hong Kong which would render children of bigamous marriages illegitimate.[1]

The issue presented is whether or not the 1931 Chinese Civil Code, the law of the place of celebration of the marriage between petitioner and beneficiaries' mother, or the Chinese law of Hong Kong, the place of petitioner's domicile at the time of the beneficiaries' birth in Hong Kong, should apply in determining the status of the beneficiaries.

An examination of the Chinese Civil Code of 1931 and Chinese law applicable in Hong Kong reveals that under either law the beneficiaries would be the legitimate daughters of the petitioner. As correctly noted by the Service, the Chinese Civil Code of 1931 abolishes concubinage. Assuming that petitioner intended to

---

[1] The Service also argues that petitioner's personal law for purposes of acknowledgement is Portuguese law, by virtue of his birth in the Portuguese Colony of Macao. We disagree. The marital relationships were created in China. Petitioner left China in 1949 and resided in Hong Kong from 1949 to 1966. The petitioner was domiciled in Hong Kong at the time of the beneficiaries' birth there. Therefore, the law of Macao is not relevant to the disposition of the issues presented.

take the beneficiaries' mother as a concubine in violation of the Civil Code, nevertheless under Article 1066 of the Civil Code, children born of such unions are considered legitimate, where there has been acknowledgement by the natural father.[2] The District Director in applying Article 1066, which refers to "children born out of wedlock," avoided deciding whether petitioner had legally married the children's mother since all that is necessary is that the natural father acknowledge the beneficiaries as his children.[3] The facts clearly show that petitioner's support of the children and their mother was sufficient under the Chinese Civil Code to constitute acknowledgement, and therefore legitimation.

On the other hand, the law of Hong Kong, recognizing the old Chinese law of 1843, acknowledges the institution of concubinage.[4] Under the Chinese Code of 1843 (Ch'ing Code), no formality is required for the taking of a concubine.[5] While custom may dictate certain formalities for the establishment of such relationships, opinions vary greatly as to what are the ceremonial requirements for the taking of a concubine.[6] The criteria for deter-

---

[2] A noted authority commenting on legitimation under the Chinese Civil Code states:

. . . this chapter has evidently been influenced by the Soviet Code of the Family which does not distinguish between legitimate and illegitimate children. As a consequence of the system adopted by the Code, it has become very easy to legitimate children without being married, . . . (Van der Valk, *An Outline of Modern Chinese Law*, 133, Peking (1939)).

[3] Article 1065 of the Chinese Civil Code further provides:

In the case the illegitimate child has been supported and brought up by the father, it is considered acknowledged.

Professor Van der Valk comments on this section: "This is of great importance to the children of the concubine, since she mostly lives in the same family as the father, as a rule her children will be supported and brought up by the natural father and thereby acknowledged" (id at p. 130).

[4] The Privy Council in the *Matter of Re Khoos Theau Tek Settlements*, L.R.A.C. 346 (1930), ruled that the English law should not be applied where it would result in injustice or oppression. As a result, the courts of the Colony recognize polygamous marriages among the Chinese and the legitimacy of the offspring (whether male or female) of such marriages (Report of the Governor's Committee on Chinese Law and Custom in Hong Kong, p. 84 (Hong Kong 1948)).

[5] The Governor's Committee on Chinese Law and Custom in Hong Kong states that the taking of a concubine was purely a matter of bargain and sale until 1910 when an imperial edict abolished purchase (*supra*, p. 22). The Privy Council affirmed the decision of the Supreme Court of the Straits Settlement that no ceremony is required, *Cheang Thye Phin* v. *Tan Ah Lay*, L.R.A.C. 369 (1920).

[6] The testimony of experts before the Governor's Committee on Chinese Law and Custom in Hong Kong produced great variations. The experts,

mining whether concubinage has been established are intention of the parties and the permanency of the union.[7] Where, as here, there has been the creation of a household and the support of the concubine and her children, and the maintenance of such a relationship over a period of time, we believe the courts of Hong Kong would find that concubinage exists. We, therefore, cannot agree with the Service view that the establishment of concubinage should depend solely on ceremonial formalities.

The status of a concubine and her children under Hong Kong law has been thus described:

According to judicial decisions, including Privy Council decisions a tsip (concubine) is in law considered a wife, a secondary or inferior wife it is true . . . but nevertheless a wife and not a kept mistress and the children of the principal wife and of the secondary wife are treated alike as to the lawful children.[8]

It is clear that under the Chinese Civil Code or under Hong Kong law the beneficiaries are the legitimate children of the petitioner.

We therefore find that Chinese law applicable in Hong Kong governs in this case. As we previously noted, the petitioner was domiciled in Hong Kong at the time of the beneficiaries' birth in Hong Kong. Chinese law and custom (as existing in 1843) apply only to Chinese domiciled in Hong Kong.[9] In the instant case, the law to be followed is the law of the petitioner's domicile at the time when the question arose, namely the birth of the beneficiaries.[10] We, therefore, believe that under Chinese law applicable in Hong Kong, the beneficiaries are entitled to preference classification under section 203 (a) (2) of the Immigration and Nationality Act.

**ORDER:** It is ordered that the decision of the District Director be and the same is hereby armed.

---

however, agreed that the consent of the principal wife (tsai) is not necessary to the taking of a concubine (Report of the Committee, *supra*, at pp. 151–158).

[7] Comments on the Report of the Committee on Chinese Law and Custom in Hong Kong, p. 9 (Hong Kong 1953). Dr. Ping Leung Lam, an authority on Chinese law, testifying before the Governor's Committee on Chinese Law and Custom (*supra*, p. 152), stated: "I have a decision of the 8th Year of the Chinese Republic by the Courts of China. This was a declaratory decision: 'To marry a concubine there must be the intention of permanent cohabitation and an intention to have her as a member of the husband's family and there must be relationship of the couple analagous to that of the husband's wife. In law there is no provision prescribing any kind of formality'."

[8] Man Kam Lo, C.B.E., Comments on the Report of the Committee ·on Chinese Law and Custom in Hong Kong, p. 9 (Hong Kong 1953).

[9] Id., at page 3.

[10] Id., at page 3.