**Chin LAU, Plaintiff,**

**v.**

**Maurice F. KILEY, District Director of the New York District, Immigration and Naturalization Service, United States Department of Justice, Defendant.**

**No. 75 Civ. 1237–LFM.**

United States District Court,
S. D. New York.

March 25, 1976.

Edward J. Ennis, and Benjamin Gim, New York City, for plaintiff.

Thomas J. Cahill, U. S. Atty. for S. D. N. Y., New York City by Thomas H. Belote, Sp. Asst. U. S. Atty., New York City, for defendant.

### OPINION

MacMAHON, District Judge.

Defendant moves, and plaintiff cross-moves, for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., in this action for a declaratory judgment. The facts narrated below have been stipulated. The action is, therefore, ripe for summary judgment.

Plaintiff, Chin Lau,[1] filed a petition with the New York district director of the Immigration and Naturalization Service ("INS"), pursuant to Section 204 of the Immigration and Nationality Act (the "Act"),[2] for a visa granting a preference status to Kin Kok Lau, as his alleged unmarried son, under Section 203(a)(2) of the Act.[3]

The petition alleged that, while residing in China, Chin Lau cohabited with, but never married, a woman named Chung Dung You. Allegedly Kin Kok Lau was born from this relationship on June 16, 1952, in Hoksan, Kwongtung, People's Republic of China. Plaintiff submitted evidence to INS to substantiate his claim that Kin Kok Lau is entitled to a visa preference as his unmarried son.

The district director denied the petition on February 28, 1974 on the ground that Kin Kok Lau was statutorily ineligible for a preference because he was illegitimate at birth and was never legitimated thereafter.

Plaintiff appealed to the Board of Immigration Appeals (the "Board"). The Board dismissed the appeal on October 23, 1974, holding that:

(1) in order to qualify as a "son" for preference under Section 203(a)(2) of the Act, the beneficiary of the visa petition must once have qualified as a "child" of petitioner under Section 101(b)(1) of the Act[4] and that the burden of establishing the existence of that relationship rests upon petitioner;

(2) there was no evidence to indicate that the paternity of Kin Kok Lau was ever "legally established" under Article 15 of the Marriage Law of the People's Republic of China and that, therefore, he was not the legitimate or legitimated son of petitioner under the law of the child's domicile; and

(3) in the absence of such evidence, Kin Kok Lau did not qualify for a preference under Section 203(a)(2) of the Act.

Plaintiff now seeks a declaratory judgment that the Board erred as a matter of law in denying plaintiff's petition. In the alternative, plaintiff claims that Section 101(b)(1)(D) of the Act[5] violates the equal protection guarantee of the Fifth Amendment in that it permits an illegitimate child to obtain a visa preference through his relationship to his natural mother, but not through his relationship to his natural father.

Section 203(a)(2) of the Act grants a preference status to the "unmarried sons or unmarried daughters of an alien lawfully admitted for permanent residence." Such a preference gives the beneficiary a priority for consideration by a United States Consulate for the issuance of an immigrant visa ahead of other similarly situated aliens.

In order to qualify for a preference as a "son" under Section 203(a)(2), the beneficiary must have once qualified as the "child" of the petitioner, as defined in Section 101(b)(1),[6] which provides, in pertinent part:

"The term 'child' means an unmarried person under twenty-one years of age who is—

(A) a legitimate child; or

\*       \*       \*       \*       \*       \*

(C) a child legitimated under the law of the child's residence or domicile . . . if such legitimation takes place before the child reaches the age of eighteen years and the child is in alien lawfully admitted for permanent residence."

---

1. Chin Lau, a male native and citizen of China, residing in New York, first entered the United States as a lawful permanent resident alien on May 19, 1966.

2. 8 U.S.C. § 1154.

3. 8 U.S.C. § 1153(a)(2). This section provides: "Visas shall next be made available . . . to qualified immigrants who are the spouses, unmarried sons or unmarried daughters of an

4. 8 U.S.C. § 1101(b)(1).

5. 8 U.S.C. § 1101(b)(1)(D).

6. *Matter of Cohen,* Interim Decision # 2255 (Board of Immigration Appeals, Jan. 8, 1974).

the legal custody of the legitimating parent or parents at the time of such legitimation.

(D) an illegitimate child, by, through whom, or on whose behalf a status, privilege, or benefit is sought by virtue of the relationship of the child to its natural mother."

Determination of an individual's legitimacy or illegitimacy is governed by the applicable law at the time and place of his birth.[7] The pertinent law here is Article 15 of the Marriage Law of the People's Republic of China, which provides:

"Children born out of wedlock enjoy the same rights as children born in lawful wedlock. No person is allowed to harm them or discriminate against them.

Where the paternity of a child born out of wedlock is legally established by the mother of the child or by other witnesses or material evidence, the identified father must bear the whole or part of the cost of maintenance and education of the child until the age of eighteen.

With the consent of the mother, the natural father may have custody of the child.

With regard to the maintenance of a child born out of wedlock, if its mother marries, the provisions of Article 22 apply."[8]

The Board found that Kin Kok Lau's paternity was never "legally established," in accordance with the second paragraph of Article 15, and, therefore, he could not be petitioner's legitimate son. The Board, therefore, never reached the question of whether plaintiff was in fact Kin Kok Lau's natural father.

Plaintiff contends that all children born in China are considered "legitimate" because all have the same rights and obligations under the first paragraph of Article 15.

We deal here with a legal system substantially different from our own.[9] Many, if not most, legal disputes are handled not in an adversary proceeding, with attorneys and judges, but by negotiation in village tribunals or local committees. Decisions are not published in any reporting system, and few outsiders have been permitted to observe any legal proceeding. Thus, we are largely operating in the dark in attempting to construe Article 15.

M. J. Meijer, in his book, "Marriage Law and Policy in the Chinese People's Republic,"[10] states that:

"Article 15 provides expressly that illegitimate children shall enjoy the same rights as those born in wedlock, which means that they have the right to be brought up and educated and the right to inherit from both parents, plus, of course, the corresponding duty to support the parents."[11]

Plaintiff asserts that Kin Kok Lau is considered legitimate under Chinese law because, with respect to Chin Lau, he has all rights of a child born in wedlock.

According to Meijer, the second paragraph of Article 15 retains "the institution of the paternity suit in [the] case of illegitimate children."[12] The Board

---

7. *Matter of Kwan,* 13 I. & N. Dec. 302, 305 (Board of Immigration Appeals, 1969).

8. Foreign Language Press, Peking (1971). Article 22 provides that, if a divorced woman remarries and her new husband contributes toward the maintenance of her children, the father may reduce his contributions by a like amount.

9. See Fitzhugh, *Red China 'Law' a Test for U. S. Lawyers,* N.Y.L.J., Jan. 29, 1976, p. 1, col. 2, and Jan. 30, 1976, p. 1, col. 2.

10. Hong Kong University Press (1971), p. 73.

11. Mr. Meijer is somewhat inaccurate in that he refers to "illegitimate children," rather than "children born out of wedlock," as they are called in Article 15. This is not a case of semantic hairsplitting, since it is possible that an out-of-wedlock child could be considered legitimate. In fact, that is the very question to which we must address ourselves in this case.

12. *Marriage Law and Policy in the Chinese People's Republic,* Hong Kong University Press (1971), p. 208.

seized upon this provision, holding that, since plaintiff was never subjected to such a suit, his paternity was never "legally established."

The Board took the same position in *Matter of Lo*, Interim Decision # 2209 (June 6, 1973), on substantially the same facts. There, however, the Board added:

"[W]e do not reach the question of whether legally establishing paternity pursuant to Article 15 is tantamount to legitimation for immigration purposes. . . ."

Thus, the Board itself recognizes that there may be a difference between establishing paternity under the second paragraph of Article 15 and the legitimation of a child born out of wedlock.[13]

■ In our view, the second paragraph of Article 15 retains a paternity suit, which will be used, as in this country, only when the putative father denies the relationship. The Board erred, therefore, in finding that such a procedure is necessary to determine the legitimacy of a child born out of wedlock.

■ We do not, however, accept plaintiff's position that the first paragraph of Article 15 makes all children legitimate for immigration purposes. We note that Chinese law still draws at least a semantic distinction between "children born out of wedlock" and "children born in lawful wedlock." It would have been far simpler, if no distinction were intended, to state that all children are considered legitimate.[14] Apparently, however, there are no provisions in Chinese law, insofar as we have been informed,

prescribing the method for "legitimation" of children born out of wedlock.[15]

We are thus confronted with an unique situation, since it appears that the terms "legitimate child" and "illegitimate child" are meaningless in the context of the Chinese legal system. The present controversy, therefore, can only be resolved by turning to the underlying policy of our immigration laws.

The reason for the distinction between legitimate and illegitimate children, created in Section 101(b)(1) of the Act, is to assure the existence of a certain familiar relationship between the alien and United States citizens or lawful resident aliens. The legislative history of the Act indicates that:

"Under this system emphasis in the selection from among those eligible to be immigrants . . . will be based upon the existence of a close family relationship to U.S. citizens or lawful resident aliens regardless of the birthplace of the alien. Reunification of families is to be the foremost consideration." [16]

It is, therefore, obvious that preferences are not to be granted unless it is shown that a family relationship existed. Normally this is done by showing that the beneficiary is a legitimate or legitimated child. However, in the present context, where those terms are meaningless, it is disingenuous to insist on such a showing. Rather, it is sufficient if a petitioner is able to prove the existence of the requisite family relationship as a matter of fact.

---

**13.** This distinction between establishing paternity and legitimation is not foreign to our laws. For example, in New York, a "paternity suit" relates to support and maintenance rights of a child. See Domestic Relations Law § 33 (McKinney 1964). Legitimation occurs by a wholly different process, namely, the marriage of the mother and father. See Domestic Relations Law § 24 (McKinney 1964).

**14.** See, *e. g., Matter of G_____*, 9 I. & N. Dec. 518, 520 (Board of Immigration Appeals, 1961), where the Board stated that, since Hungarian law had dispensed altogether with the terms "born in wedlock" and "born out of

wedlock," "there are no legitimate or illegitimate children in Hungary any more, only children of equal status."

**15.** Similarly, while the Chinese Marriage Law apparently recognizes adoption of children, no formal procedures are stated. According to Meijer, adoption requires only an agreement, written or oral, between the natural parents of the child and the adopting parents. *Marriage Law and Policy in the Chinese People's Republic, supra*, at p. 206.

**16.** S.Rep.No.748, 89th Cong., 1st Sess., U.S. Code Cong. & Admin.News (1965), p. 3332.

Thus, if Chin Lau is indeed Kin Kok Lau's natural father, and if they treated each other as father and son, as shown by creditable evidence of whatever facts INS deems material, including, for example, that they lived together in the same household for a substantial period of time and that Chin Lau contributed to Kin Kok Lau's upbringing, then there is no valid reason why the desired preference should be denied.

It is not our function to determine whether plaintiff and Kin Kok Lau ever stood in the relationship of parent and child. Nor do we specify the kind or amount of evidence which plaintiff must produce to establish his claim. The determination of the standards of proof and sufficiency of the evidence to establish the requisite relationship is properly the function of INS, and we, therefore, remand this matter to INS for further consideration.[17]

In light of the foregoing, it is unnecessary to pass upon plaintiff's constitutional claim.

Before closing, we wish to compliment both counsel for their extraordinarily able and lawyer-like presentation of this case. Their arguments were concise, cogent, well-written, and well-researched. Such exemplary work is all too rare in this court and has been of great assistance to us in deciding this elusive problem.

Accordingly, defendant's motion for summary judgment is denied. Plaintiff's cross-motion for summary judgment is granted to the extent that we direct that this matter be remanded to the Board for reconsideration of plaintiff's petition in accordance with the foregoing opinion.

Submit judgment within ten (10) days.

---

17. Since the burden is on plaintiff to establish, to the satisfaction of INS, the facts warranting the desired preference, the probability of a rash of sham petitions seems minimal.