MATTER OF CORTEZ

In Visa Petition Proceedings

A-22273811

*Decided by Board August 3, 1977*

(1) The United States citizen petitioner filed visa petitions to accord his parents who are Mexican aliens, classification under section 201(b) of the Immigration and Nationality Act. The petition filed in behalf of petitioner's mother was granted, while that filed in behalf of his father was denied.

(2) Petitioner, who was born out of wedlock became legitimated under Michigan law (MCLA section 702.83), when he was 28 years of age, by virtue of the marriage of his parents.

(3) Although the Michigan legitimation statute provides that a child legitimated by the subsequent marriage of his parents is considered legitimate from birth, the conferral of this status is a matter quite apart from the age of the child at the time the act of legitimation takes place. The age of the child at the time the act of legitimation takes place is controlling.

(4) In order for petitioner to confer immigration benefits on beneficiary as his father, he must first qualify as beneficiary's "child" under section 101(b)(1)(C) of the Act. He must have been legitimated by an act of legitimation which took place before petitioner reached his 18th birthday. Since petitioner was 28 years of age when the act of legitimation occurred, petitioner did not qualify as beneficiary's "child," under the Act, and the visa petition was properly denied.

(5) *Matter of Obando*, Interim Decision 2600, (BIA 1977), followed.

ON BEHALF OF PETITIONER: Richard Feferman, Esquire
                              Michigan Migrant Legal Assistance Project
                              102 South Mechanic
                              Berrien Springs, Michigan 49103

BY: Milhollan, Chairman; Wilson, Maniatis, Appleman, and Maguire, Board Members

The United States citizen petitioner filed a visa petition seeking to classify the beneficiary as his parent under section 201(b) of the Immigration and Nationality Act, so that his father might obtain an immigrant visa as an "immediate relative" of a United States citizen. The District Director denied the petition on the ground that the petitioner had not been legitimated before he reached the age of 18, and therefore could not be considered the beneficiary's "child" within the definition of section 101(b)(1)(C) of the Act. The petitioner has appealed. The appeal will be dismissed.

The facts in this case are not disputed. On December 13, 1976, the

petitioner submitted two Form I—130 visa petitions for his mother and father, who are Mexican aliens. The petitioner was born out of wedlock. He was not legitimated until he was 28 years old, when his parents married. The District Director approved the petition in behalf of the petitioner's mother, but denied the petition in behalf of the father.

The petitioner has challenged the District Director's decision on several grounds.

## I.

In order to qualify the beneficiary as his "parent" under section 101(b)(2), the petitioner must show that he was at some time the beneficiary's "child."

Under section 101(b)(1), a "child" is defined as an unmarried person under 21 years of age who is a legitimate or legitimated child, a stepchild, an adopted child, or an illegitimate child seeking preference by virtue of his relationship with his natural mother.

The petitioner contends that he is the beneficiary's child within the definition of section 101(b)(1)(C), which provides:

> (C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

The petitioner is a resident of Michigan. Under Michigan law, "upon the intermarriage of the parents of a child born out of wedlock . . . such child shall be legitimate with the identical status, rights, and duties of a child born in lawful wedlock, effective from its birth. . . ." (MCLA section 702.83)

The petitioner's legitimation took place when he was 28 years old. It thus would seem clear that he could not be considered the beneficiary's "child" within the definition of section 101(b)(1)(C). However, the petitioner fastens on the language of the Michigan statute which legitimizes the child "effective from its birth." The argument is fallacious. Generally, when a child is legitimated, the child is deemed legitimate from the time of its birth. This is, however, something quite apart from the age of the child at the time when the act of legitimation takes place. *Matter of Obando*, Interim Decision 2600 (BIA July 20, 1977).

## II.

The petitioner argues, in the alternative, that sections 101(b)(1)(C) and 101(b)(1)(D)[1] of the Act violate the equal protection principles

---

[1] Section 101(b)(1)(D) defines a "child" as "an illegitimate child, by, through whom, or on whose behalf a status, privilege, or benefit is sought by virtue of the relationship of the child to its natural *mother*." (Emphasis supplied.)

embodied in the Due Process Clause of the Fifth Amendment, by discriminating irrationally on the basis of gender, legitimacy and age at the time of legitimation.

The petitioner argues that it is not simply the invidious classifications that make the statute vulnerable to constitutional attack. The statute is also said to interfere with constitutionally protected familial interests. The petitioner cites *Weinberger* v. *Wiesenfeld*, 420 U.S. 636 (1975); *Roe* v. *Wade*, 410 U.S. 133 (1973); *Stanley* v. *Illinois*, 405 U.S. 645, 651 (1972) and *Griswold* v. *Connecticut*, 381 U.S. 479 (1965), in this regard.

The statutory provisions are also challenged on the ground that they create an unwarranted irrebuttable presumption that an illegitmate child and his father never have the kind of close relationship which illegitimate children are presumed by the statute to have with their mothers. Here the petitioner cites *Weinberger* v. *Wiesenfeld, supra; Jiminez* v. *Weinberger*, 417 U.S. 628 (1974); *Cleveland Board of Education* v. *LaFleur*, 414 U.S. 632 (1974).

All of these arguments were rejected by the majority of the Supreme Court in the case of *Fiallo* v. *Bell*, 430 U.S. 787 (April 26, 1977).[2] The Court based its decision on the long line of cases holding that the power to expel or exclude aliens is "a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." The Court cited *Hampton* v. *Mow Sun Wong*, 426 U.S. 88 (1976); *Matthews* v. *Diaz*, 426 U.S. 67 (1976); *Kleindienst* v. *Mandel*, 408 U.S. 753 (1972); *Galvan* v. *Press*, 347 U.S. 522 (1954); *Shaughnessy* v. *Mezei*, 345 U.S. 206 (1953); *Harisiades* v. *Shaughnessy*, 342 U.S. 580 (1952); *Lem Moon Sing* v. *United States*, 158 U.S. 538 (1895); *Fong Yue Ting* v. *United States*, 149 U.S. 698 (1893); *The Chinese Exclusion Case*, 130 U.S. 581 (1889).

### III.

Lastly, the petitioner argues that this case is analogous to *Lau* v. *Kiley*, 410 F. Supp. 221 (S.D.N.Y. 1975), appeal docketed, 2 Cir., and that his visa petition ought therefore to be approved. We fail to see the analogy. In *Lau*, the court was confronted with a "unique situation, since it appears that the terms 'legitimate child' and 'illegitimate child' are meaningless in the context of the Chinese legal system." 410 F. Supp. at 224. There are apparently no provisions in Chinese law prescribing a method for "legitimation" of children born out of wedlock. In these unique circumstances, the court ruled that it was sufficient for the

---

[2] In any event, we have no power to declare unconstitutional the statutes which we administer. *Matter of Chery and Hasan*, Interim Decision 2405 (BIA 1975); *Matter of Lennon*, Interim Decision 2304 (BIA 1974); *Matter of Wong*, 13 I. & N. Dec. 820, 823 n. 2 (BIA 1971); *Matter of Santana*, 13 I. & N. Dec. 362, 365 (BIA 1969).

petitioner in that case to prove the requisite family relationship "as a matter of fact." [3]

The petitioner's argument is that Michigan law does not distinguish between children legitimate at birth and children legitimated by the subsequent marriage of their parents. This argument overlooks the fact that Michigan law still retains the concept of illegitimacy and prescribes a procedure by which illegitimate children may be legitimated. Section 101(b)(1)(C) requires that the legitimating act occur before the child reaches the age of 18. The purpose of this requirement is obvious. It is to insure that a real family relationship did exist between the father and his child born out of wedlock. The fact that the legitimated child has the same rights as a legitimate child under Michigan law, and indeed under the law of every state, as far as we know, is quite irrelevant to the concern which induced Congress to prescribe the age limitation contained in section 101(b)(1)(C).

The petitioner is not without a remedy in his quandary. Once his mother becomes a lawful permanent resident, she can submit a second preference visa petition in behalf of her husband.

**ORDER:** The appeal is dismissed.

---

[3] The court relied upon our decision in *Matter of G–*, 9 I. & N. Dec. 518, 520 (BIA 1961), where we stated that since Hungarian law had dispensed altogether with the terms "born in wedlock" and "born out of wedlock," "there are no legitimate or illegitimate children in Hungary any more, only children of equal status."