MATTER OF SANCHEZ

In Visa Petition Proceedings

A-22164879

*Decided by Board January 30, 1979*

Although illegitimate at the time of his birth in Honduras in 1949, the "acknowledged" child of the petitioner-father can now qualify for preference status as his unmarried son in view of the elimination of all legal distinctions between legitimate and illegitimate children in Honduras in 1957. *Matter of Ramirez*, 13 I. & N. Dec. 666 (BIA 1971) modified.

ON BEHALF OF PETITIONER: S. Bernard Schwarz, Esquire
299 Broadway, Suite 1517
New York, New York 10007

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

The United States citizen petitioner has appealed from an August 31, 1977, decision of the District Director denying a visa petition filed in behalf of his unmarried son under section 203(a)(1) of the Immigration and Nationality Act, 8 U.S.C. 1253(a)(1). The appeal will be sustained.

The beneficiary, a native and citizen of Honduras, was born out of wedlock on May 5, 1949. The petitioner officially acknowledged the child one week later before the Municipal Secretary in charge of the Civil Registry, but never married the beneficiary's natural mother. The petitioner thereafter immigrated to the United States and acquired citizenship through naturalization in 1972. He states that he listed the beneficiary as his son on his petition for naturalization.

In April 1977, the petitioner submitted the present visa petition on behalf of the beneficiary. Included with the petition was an extract of the Honduran Constitution of 1965 and a brief prepared by a Honduran attorney, both of which indicated that distinctions between legitimate, legitimated, and natural children had been eliminated in that country, and that all children were accorded equal "rights and duties."

On August 31, 1977, the District Director denied the petition finding that the "facts presented disclose[d] that the beneficiary was illegitimate at birth" and that there was no evidence "that he was ever legitimated by the marriage of his natural parents to each other, or otherwise legitimated." The District Director accordingly concluded

that the beneficiary had never qualified as the petitioner's child under section 101(b) of the Act, 8 U.S.C. 1101(b), and that he, therefore, was ineligible for any visa preference.

On appeal, the petitioner, through counsel, submits that the District Director refused to consider the evidence concerning the current law of Honduras regarding the status of natural born children. He states that the beneficiary was effectively "legitimated" under Honduran law prior to his 18th birthday and that he is accordingly now eligible for preference status as the petitioner's son.

The evidence before the Board regarding the status of children born out of wedlock in Honduras includes extracts from the Honduran Constitutions of 1957 and 1965, extracts from the Civil Code of Honduras, a one-line statement apparently provided by the Consul General of Honduras in New York, two legal memoranda prepared by Honduran counsel at petitioner's request, and a memorandum entitled "Legitimation-Honduras" prepared by the Hispanic Law Division of the Library of Congress on July 31, 1978.

These materials reflect the following chronology of the beneficiary's status under the Honduran law relative to his natural father. At the time of the beneficiary's birth, distinctions existed in Honduras between the rights accorded legitimate and natural children.[1] The beneficiary was in fact illegitimate at birth and the petitioner's acknowledgment of the child shortly after birth did not effect a legitimation (the subsequent marriage of the natural parents being essential to legitimation under the provisions of the Honduran Civil Code then in effect). Under the Civil Code, however, the acknowledgment of the beneficiary did result in the "naturally recognized [child being] subject to the authority of the father, and in [default] to the mother." Then, in 1957 when the beneficiary was eight years old, Honduras adopted a new Constitution. Under the 1957 Constitution, qualifications "concerning the nature of filiation [were] abolished" and "no inequality among children [was] recognized; all having the same rights and duties."[2] The memoranda prepared by the Library of Congress and those submitted by respondent's counsel indicate that this constitutional provision superseded and eliminated the effect of all statutory distinctions made between children born in wedlock and those born out of wedlock. Previously born "natural" children were not made "legitimate" from date of birth, but from 1957 onward their status as "natural children" was abolished and they were accorded the same "rights and duties" of children born in wedlock.

Counsel submits that under these facts the beneficiary should be deemed to have been "legitimated" within the meaning of the immigra-

---

[1] Legitimate descendants, for example, were preferred over natural descendants under the provisions of the Honduran Civil Code regarding intestate distribution.

[2] A similar provision is included in the 1965 Constitution of Honduras now in force.

tion laws. He notes that the "legitimation" occurred while the beneficiary was under 18 years of age, that the beneficiary was then "subject to the authority of the [petitioner]," [3] and that thereafter the child had the identical "rights and duties" of a child born in wedlock.

Considering the evidence before the Board regarding relevant Honduran law (all of which is consistent and unrebutted), we agree that the petitioner has established that the beneficiary is eligible for a visa preference as his unmarried son under section 203(a)(1) of the Act. See *Matter of Lee*, Interim Decision 2606 (BIA 1977). We do not reach the question, however, whether the beneficiary should be deemed "legitimate" from the effective date of the 1957 Honduran Constitution or should be viewed as having been "legitimated" on that date, as submitted by counsel. See *Lau* v. *Kiley*, 563 F.2d 543 (2 Cir. 1977); *Petition for Naturalization of Fraga*, 429 F. Supp. 549 (D. P.R. 1974); *Matter of Wong*, Interim Decision 2682 (BIA 1978); *Matter of Clahar*, Interim Decision 2643 (BIA 1978); *Matter of Kubicka*, 14 I. & N. Dec. 303 (BIA 1972); *Matter of Kwan*, 13 I. & N. Dec. 302 (BIA 1969); *Matter of Jancar*, 11 I. & N. Dec. 365 (BIA 1965); *Matter of Chojnowski*, 11 I. & N. Dec. 287 (BIA 1965); *Matter of G—*, 9 I. & N. Dec. 518 (BIA 1961); *Matter of K—*, 8 I. & N. Dec. 73 (BIA 1958). Under either analysis, we would find this beneficiary's eligibility for preference status under section 203(a)(1) of the Act to have been established in view of the apparent elimination of all legal distinctions between legitimate and illegitimate children in Honduras.[4]

The appeal will accordingly be sustained.

**ORDER:** The appeal is sustained.

---

[3] In view of the statutory provision bestowing the primary right of "authority" over the child with the petitioner subsequent to his acknowledgment of the beneficiary in 1949.

[4] *Matter of Ramirez*, 13 I. & N. Dec. 666 (BIA 1971), is modified to the extent inconsistent with the decision herein.