MATTER OF PATRICK

In Visa Petition Proceedings

A-27243552

*Decided by Board September 1, 1988*

(1) In order to obtain preference status for the beneficiary as his son under section 203(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(1) (1988), a petitioner must establish that the beneficiary once qualified as his "child" within the meaning of section 101(b)(1) of the Act, 8 U.S.C. § 1101(b)(1).

(2) Under the law of New York, the father's residence and domicile, legitimation of a child born out of wedlock requires the marriage of the child's natural parents.

(3) By virtue of the Republic of Trinidad and Tobago Status of Children Act of 1981, enacted on March 1, 1983, all children born in or out of wedlock (after the effective date of the Act) have equal status under the laws of that country. *Matter of Archer,* 10 I&N Dec. 92 (BIA 1962), modified.

(4) A child who comes within the scope of the Republic of Trinidad and Tobago Status of Children Act is included within the definition of a legitimate or legitimated "child" as set forth in section 101(b)(1) of the Act if paternity is established and the person is under 21 years of age and the legitimation took place before the child reached the age of 18 years.

ON BEHALF OF PETITIONER:  
Anthony W. Agard, Esquire  
336 East 28th Street  
Brooklyn, New York 11226

ON BEHALF OF SERVICE:  
Steven R. Abrams  
District Counsel

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

The lawful permanent resident petitioner applied for preference status for the beneficiary as his unmarried son pursuant to section 203(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(1) (1982). In a decision dated March 21, 1985, the district director denied the visa petition on the ground that the petitioner never married the beneficiary's natural mother and, therefore, the beneficiary did not qualify as the legitimate or legitimated child of the petitioner within the meaning of section 101(b)(1) of the Act, 8 U.S.C. § 1101(b)(1) (1982). The petitioner appealed that decision. On April 10, 1985, the district director returned the petitioner's appeal

to his counsel of record with a memorandum noting that the required filing fee had not been paid. The district director further noted that because of the lapse of time, counsel might wish to file a motion to reopen to avoid an untimely filed appeal. On April 25, 1985, the petitioner filed a motion to reopen with the district director. With this motion, the petitioner submitted new and material evidence indicating that the Trinidad and Tobago Status of Children Act of 1981, which apparently gave all children equal status under the laws, became effective on March 1, 1983.[1] The district director noted that the new evidence submitted in support of the motion appeared to support the petitioner's claim that the beneficiary is his legitimated child. However, the district director noted a Board precedent decision declaring that in Trinidad and Tobago the parties must marry in order to confer benefits upon the beneficiary. Consequently, in a decision dated July 10, 1986, the district director affirmed his decision of March 21, 1985, and certified his decision to the Board for our review. The decision of the district director will be reversed.

The petitioner is a 43-year-old native and citizen of Trinidad and Tobago who became a lawful permanent resident of the United States on April 19, 1970. The beneficiary was born out of wedlock in Port-of-Spain, Trinidad, on April 15, 1969, to the petitioner and a women he never married. The instant visa petition was filed on January 3, 1985.

In support of the visa petition, the petitioner submitted the beneficiary's birth certificate, an affidavit from the petitioner's brother attesting to the beneficiary's birth, and the beneficiary's baptismal certificate. The birth and baptismal certificates reflect that the beneficiary was given his natural mother's surname, and these documents do not identify the beneficiary's natural father. The affidavit of the petitioner's brother alleges that the beneficiary's natural father is the petitioner. This affidavit was sworn and executed in 1974, over 10 years before the visa petition was filed. In this case, the district director was satisfied that the petitioner had established his paternity of the beneficiary.

The district counsel for the Immigration and Naturalization Service has submitted a written brief to accompany the certification of this case to the Board. Therein, the district counsel expresses his satisfaction that the petitioner is the beneficiary's natu-

---

[1] The record reflects a copy of legal notice No. 33 in which the President of the Republic of Trinidad and Tobago appointed March 1, 1983, as the date on which the Status of Children Act of 1981 came into operation. This document was accepted by the district director as exhibit 3 and the Service does not challenge its authenticity.

ral father. The district counsel also states that in 1983 Trinidad and Tobago adopted a new law eliminating all legal distinctions between children born in and out of wedlock. The district counsel further states that as the beneficiary was under 18 years of age when the new law took effect, it appears that he would qualify as the petitioner's legitimated child for immigration purposes. The district counsel suggests that the Board modify or overrule *Matter of Archer*, 10 I&N Dec. 92 (BIA 1962), to the extent that it requires the marriage of the natural parents in order for a child to be legitimated in the Republic of Trinidad and Tobago.

In visa petition proceedings, the burden is on the petitioner to establish eligibility for the benefit sought. *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). To obtain preference status for the beneficiary as his son under section 203(a)(1) of the Act, the petitioner must establish that the beneficiary once qualified as his child as that term is defined by section 101(b)(1) of the Act. *Matter of Coker*, 14 I&N Dec. 521 (BIA 1974).

Section 101(b)(1) of the Act provides in pertinent part:

The term "child" means an unmarried person under twenty-one years of age who is—

(A) a legitimate child; or

. . . .

(C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

In the present case, the beneficiary was born out of wedlock. Accordingly, it must be established that he was either deemed legitimate or legitimated under the law of Trinidad or New York.

Under the law of New York, the legitimation of a child born out of wedlock requires the marriage of the child's natural parents. *Matter of Bullen*, 16 I&N Dec. 378 (BIA 1977); *Matter of Archer, supra.* Here, the beneficiary's natural parents never married.

In light of the district director's certification of this record to us for review, we have examined the laws of Trinidad and Tobago in order to ascertain the current legal status of children born in or out of wedlock in that country and to determine how these laws may affect the visa petition under consideration in this case.

We note that on March 1, 1983, the Status of Children Act of 1981 was enacted in the Republic of Trinidad and Tobago. The expressed intention of this legislation is to remove the legal disabilities of children born out of wedlock. It is clear from studying the text of the Status of Children Act of 1981, section 3, that the draft-

ers intended to establish equal status under the laws of Trinidad and Tobago for children born in or out of wedlock.

We have held that when the country where the beneficiary was born eliminates all legal distinctions between legitimate and illegitimate children, all children are deemed to be the legitimate offspring of their natural father from the time that country's laws are changed. *See Matter of Pavlovic,* 17 I&N Dec. 407 (BIA 1980); *Matter of Hernandez,* 17 I&N Dec. 7 (BIA 1979). The test we have applied for immigration preference purposes is equality of filial rights when compared with those children born in wedlock. *Compare Matter of Sanchez,* 16 I&N Dec. 671 (BIA 1979) *with Matter of Clahar,* 18 I&N Dec. 1 (BIA 1981) *and Matter of Reyes,* 16 I&N Dec. 475 (BIA 1978). The dispositive factor was that the acts eliminating all legal distinctions between legitimate and illegitimate children had occurred before the beneficiary had reached the age of 18 years. *See Matter of Obando,* 16 I&N Dec. 278 (BIA 1977). In the present case, the beneficiary was under 18 years old when the Trinidad and Tobago Status of Children Act of 1981 was enacted. Accordingly, the beneficiary did qualify as the "child" of his natural father within the meaning of section 101(b)(1) of the Act. Therefore, inasmuch as the Service is satisfied that the petitioner has adequately proven his paternity of the beneficiary, we conclude that the beneficiary qualifies for preference status as the petitioner's unmarried son under section 203(a)(1) of the Act in view of the apparent elimination of all legal distinctions between legitimate and illegitimate children in the Republic of Trinidad and Tobago. The Board's decision in *Matter of Archer, supra,* is modified to the extent it is inconsistent with the decision herein. The decision of the district director denying the visa petition will be reversed and the visa petition approved.

ORDER: The decision of the district director is reversed, and the visa petition is approved.