124 N.J. Super. 535 (1973)
308 A.2d 41
E AND WIFE, PLAINTIFFS,
v.
T AND WIFE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 29, 1973.
*538 Mr. Joel D. Siegal for plaintiffs (Messrs. Hellring, Lindeman & Landau, attorneys).
Mr. Adrian M. Unger for defendants (Messrs. Milton M. and Adrian M. Unger, attorneys).
FUNDLER, J.J.D.R.C., Temporarily Assigned.
The present action was instituted on January 3, 1973 when plaintiffs filed with this court their verified complaint and supporting affidavits seeking custody of the infant children S and D and other ancillary relief. They thereupon obtained an order to show cause directing defendants to return said children immediately to plaintiffs' care and custody, and restraining them from taking the children from plaintiffs' custody without the order of this court. The order to show cause was returnable on January 26, 1973 and it, together *539 with the verified complaint and supporting affidavits, was personally served upon defendants on January 4, 1973 in Las Vegas, Nevada.
Defendants have now moved before this court for an order dismissing the complaint and discharging the order to show cause, asserting that the court lacks jurisdiction over the subject matter, the person of defendants and the infant children; that there was insufficiency of process, and on the basis of comity and forum non conveniens. The original return date of the order to show cause was adjourned by consent and the parties agreed to consolidate the hearing on the order to show cause and defendants' motions. All parties have filed detailed affidavits, supporting documents and extensive legal briefs. Initial oral argument was heard on April 30, 1973 and the matter was thereafter continued for several weeks to permit the filing of additional papers and briefs with the court. Further oral argument was waived and the matter is now before the court for decision on the documentation filed.
The essential facts necessary for a determination of the issues presented are neither complicated nor materially disputed. Plaintiff-father, age 49, has been married to the co-plaintiff since 1955. Defendant-mother, age 25, has been married to the co-defendant since February 1972. Plaintiff-father and defendant-mother are the natural parents of the two illegitimate infant children S and D whose custody is in dispute. The first child S was born on April 20, 1966 and the second child D was born on June 24, 1967. Both children were born in the same hospital in Philadelphia, Pennsylvania, under plaintiff-father's last name which the defendant-mother had assumed upon admission to the hospital for each childbirth.
It is undisputed that since October 1967 both children have been under the continuous care and custody of plaintiff-father and his wife who have resided here in New Jersey. Between October 1967 and September 1970 defendant-mother saw the children on but three occasions and thereafter *540 at infrequent intervals until December 1972. On December 26, 1972 defendants visited the home of plaintiffs in New Jersey and under a subterfuge took physical control of the children and surreptitiously removed them from the State of New Jersey to their home in Las Vegas, Nevada.
After service of the papers in this proceeding upon defendants in Nevada, plaintiffs filed a petition for a writ of habeas corpus in the Nevada courts on January 8, 1973 seeking to enforce the interim relief granted by this court. On January 23, 1973 the Nevada court granted plaintiffs' petition, and defendants in this action were ordered to immediately deliver the children S and D to the natural father, plaintiff in this action. In that decision, Judge Michael J. Wendell, sitting in the Eighth Judicial District Court of the State of Nevada, said.
This court believes that the children, having lived in the State of New Jersey for all this period of time, that the proper forum for hearing this matter is the State of New Jersey. And this court defers to that state. The Petition for the Writ is granted.
Defendants filed an immediate appeal from this decision, and upon the posting of a bond, Judge Wendell's order was stayed the same day it was made. Plaintiffs' subsequent efforts in the Nevada courts to dissolve the order staying the writ granted by Judge Wendell have been futile and the case continues on its appellate course in the Nevada courts.
The merits of the custodial issue and the ancillary relief framed in the complaint are not now before this court. It is basic, however, that in all matters relating to the custody of minor children the paramount consideration of this and any other court is and should be the safety, happiness, physical, mental and moral welfare of the child. Fantony v. Fantony, 21 N.J. 525 (1956); Schwartz v. Schwartz, 68 N.J. Super. 223 (App. Div. 1961); Sheehan v. Sheehan, 38 N.J. Super. 120 (App. Div. 1955); Scanlon v Scanlon, 29 N.J. Super. 317 (App. Div. 1954); Grove v. Grove, 21 N.J. Super. 447 (App. Div. 1952); Lippincott v. Lippincott, *541 97 N.J. Eq. 517 (E. & A. 1925). Each case must be decided on its own facts and circumstances, and neither parent has a superior right to custody. Fantony v. Fantony, supra. Judicial jurisdiction over the subject matter relating to such custodial issues is not necessarily exclusive, and more than one state, under a given set of facts, could have subject matter jurisdiction. See Vannucchi v. Vannucchi, 113 N.J. Super. 40 (App. Div. 1971); Sampsell v. Superior Court, 32 Cal.2d 763, 197 P.2d 739 (Sup. Ct. 1948); May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953). See also, Note, "Long-Arm Jurisdiction in Alimony and Custody Cases," 73 Colum. L. Rev. 289, 307 (1973). A court's election to exercise its jurisdiction in a custody dispute where the facts evidence a concurrent jurisdiction situation should be grounded in sound judicial discretion based upon the equities presented and the primary or paramount concern in protecting the child's best interests. Vannucchi v. Vannucchi, supra.
The parens patriae jurisdiction of this court, derived from the common law, case law and statutes to regulate and control the custody of infants, has as its basis the protection of the state that is due to all helpless or incompetent persons. Henderson v. Henderson, 10 N.J. 390 (1952); Fantony v. Fantony, supra. This jurisdiction is as broad as it is long, and springs from the necessity of the case. See In re Olcott, 141 N.J. Eq. 8 (Ch. 1947). It is illogical to believe, and unacceptable to this court that its parens patriae jurisdiction over the infants in question can be lost or thwarted by their physical removal from the State of New Jersey against our public policy.
The provisions of N.J.S.A. 9:2-2 are definitive legislative expressions of the public policy of the State of New Jersey. This statute in its pertinent part provides,
When the Superior Court has jurisdiction over the custody and maintenance of the minor children of parents ... separated or living separate, and such children ... have resided five years within its [New Jersey] limits, they shall not be removed out of its jurisdiction *542 against their own consent, if of suitable age to signify same, nor while under that age without the consent of both parents, unless the court, upon cause shown, shall otherwise order.
It has already been held that the parens patriae jurisdiction of this court is not limited by virtue of this statute but that it supplements the jurisdiction referred to previously. Fantony v. Fantony, supra.; Casteel v. Casteel, 45 N.J. Super. 338 (App. Div. 1957). The provisions of N.J.S.A. 9:2-3 are also supplemental to the parens patriae jurisdiction of this court under the cited cases and it too confers jurisdiction in this court with respect to the custody of minor children as those in this case.
Under the facts presented New Jersey is the proper forum for a decision on the merits relating to the custody of S and D, who have spent most of their natural lives here. This was recognized by Judge Wendell in his judicial determination deferring that issue to this jurisdiction, and although not expressly stated that ruling is properly based upon principles of comity and forum non conveniens. See Starr v. Berry, 25 N.J. 573 (1958). Such cooperation between states in the delicate cases involving the custody of minor children can effectively preclude the involuntary removal of minor children from one jurisdiction to another without prior recourse to the proper judicial tribunal wherein the children are first found. This will also protect the children from the damaging physical and emotional effects that such sudden change brings about and will enable the state with a more direct interest in the children and better ability under the facts to determine the custodial issues. This court will not abdicate its statutory and parens patriae duty and responsibility to protect the interests of the minor children in question and will therefore exercise and retain jurisdiction in this case to hear and decide the issues raised.
It has been advanced by the defendants that in view of the provisions of N.J.S.A. 9:16-1, the defendant-mother had exclusive right to the custody of the children *543 and an absolute right to remove them from this state. That statute gives to the mother of an illegitimate child the "exclusive right to its custody and control and the putative father of such child shall have no right of custody, control or access to such child without the mother's consent." Distinctions affecting the substantial rights of either a child or its natural parents based upon the illegitimate status of the child have been held to be violative of the due process clause of the Fourteenth Amendment and a denial of equal protection of the law under the Constitution of the United States. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Plaintiff-father is not the "putative father" of the children in question but is the admitted natural father. In R. v. F., 113 N.J. Super. 396 (J.D.R. Ct. 1971), the court held that the admitted natural father of an illegitimate child had a right of visitation, distinguishing between "putative father" as used in N.J.S.A. 9:16-1 and natural father, the former being one who is accused, alleged or reputed to be the father of an illegitimate child whereas the latter is one who admits paternity or has been adjudicated same. This essential distinction renders the provisions of N.J.S.A. 9:16-1 inapplicable to the present case, and defendants' position on this issue is hereby rejected. In addition it should be noted that the natural mother's fitness and her abandonment of the children are other factual issues raised by the complaint and thus whatever rights defendant-mother may have under the statute may be conditional or may have been forfeited.
Defendants also contend that this court has no in personam jurisdiction over them. They were served personally with the order to show cause, verified complaint and supporting affidavits in Las Vegas, Nevada. It is this court's opinion that R. 4:4-4 prescribes the method of effectuating long-arm personal jurisdiction over defendants in this case. See Wright v. Wright, 114 N.J. Super. 439 (Ch. Div. 1971). Defendants' actions in coming to the State of New Jersey and removing therefrom the children in question, who *544 had resided here most of their natural life and for at least the last five years, is in this court's opinion sufficient minimum contacts on the custodial issue, not to mention the ancillary relief requested. Such jurisdiction does not offend traditional notions of fair play and substantial justice and is consistent with due process of law. Wright v. Wright, supra; Avdel Corporation v. Mecure, 58 N.J. 264 (1971); J.W. Sparks & Co. v. Gallos, 47 N.J. 295 (1966); Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878); International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). See also, Note, "Long-Arm Jurisdiction in Alimony and Custody Cases," 73 Colum. L. Rev. 289 (1973).
For the foregoing reasons defendants' motions are denied, the order to show cause is hereby made permanent, and the action shall proceed in a plenary manner. Defendants are hereby granted 30 days from the date of this decision to file their answer to the complaint. Submit an order in accordance herewith which should include a provision for a probation department investigation in accordance with R. 4: 79-8.