MATTER OF DELA ROSA

In Visa Petition Proceedings

A–19372117

*Decided by Board June 18, 1974*

(1) The legal custody requirement of section 101(b)(1)(C) of the Immigration and Nationality Act, as amended, is mandatory. In order to qualify as a "child" under section 101(b)(1)(C), the legitimated child must have been in the legal custody of the legitimating parent at the time of legitimation.

(2) In the absence of affirmative evidence that he had legal custody of the beneficiary at the time of legitimation, petitioner has failed to meet the burden of establishing that beneficiary, who was born out of wedlock in Panama in 1956 and legitimated under the law of Panama in 1957, is his "child" within the contemplation of section 101(b)(1)(C) of the Act, as amended. Accordingly, beneficiary is ineligible for immediate relative status under section 201(b) of the Act.

The United States citizen petitioner applied for immediate relative status for the beneficiary as his child under section 201(b) of the Immigration and Nationality Act. In a decision dated October 5, 1973, the District Director denied the petition on the ground that the petitioner had never married the beneficiary's mother and therfore had not established the required relationship to the beneficiary. The petitioner has appealed from that denial. The appeal will be dismissed.

Section 101(b)(1)(C) defines the term "child" as including a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the age of 18 years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

The beneficiary was born in Panama on August 26, 1956 to the petitioner and a woman who was not his wife. The beneficiary's birth certificate states that the petitioner declared paternity before an official of the Civil Registry of Colon on March 14, 1957. Under the law of Panama, the petitioner's declaration established

the beneficiary's legal status as the petitioner's legitimated child. *Matter of Sinclair*, 13 I. & N. Dec. 613 (BIA 1970).[1]

However, in order to qualify as a "child" under section 101(b)(1)(C), the beneficiary must have been in the legal custody of the legitimating parent at the time of legitimation. The legal custody requirement of section 101(b)(1)(C) was considered by the Board in an unpublished decision, *Matter of Harris*, A18 953 024 (BIA November 6, 1970). In that case we noted that the statutory langugage was mandatory.[2] We stated that "legal custody" may vest by virtue of either a natural right or a court decree. We further stated that the mother of an illegitimate child generally has the primary right to its custody,[3] and in the absence of affirmative evidence that the father has obtained custody, we will not presume that the mother has been deprived of custody.

The petitioner has submitted an affidavit stating that he has supported the beneficiary since birth. He states in the Notice of Appeal that although a visa was issued to the beneficiary at the time the petitioner left Panama in 1965, she did not accompany the petitioner at that time because her mother did not wish her to leave. The record also contains a document signed by the beneficiary's mother, dated December 2, 1969, authorizing the petitioner to bring the beneficiary to the United States.

In visa petition proceedings, the petitioner has the burden of establishing eligibility for the benefit conferred by the immigration laws. *Matter of Brantigan*, 11 I. & N. Dec. 493 (BIA 1966). Nothing in the record before us indicates that the petitioner had legal custody of the beneficiary at the time of legitimation. In fact, the necessity of receiving the permission of the beneficiary's mother in order to bring her to this country indicates that the mother, rather than the petitioner, had legal custody of the beneficiary.

The petitioner has not established that the beneficiary is his "child" under section 101(b)(1)(C) of the Act. Consequently, the appeal will be dismissed. If the petitioner is able to obtain legal custody and legitimate the beneficiary under the law of his present residence before she reaches the age of 18, he can submit a new petition in her behalf.

**ORDER:** The appeal is dismissed.

---

[1] In *Matter of Kubicka*, Interim Decision No. 2189 (BIA, 1972), we held that the term "legitimate" refers solely to a child born in wedlock. A child born out of wedlock who attains status as a legitimate child by some affirmative act on the part of his parent or parents is considered to be "legitimated." Therefore, the beneficiary is a "legitimated" child and the provisions of section 101(b)(1)(C) of the Act are applicable.

[2] See also S. Rep. No. 1515, 81st Cong., 2d Sess. 468 (1950).

[3] See 10 Am. Jur. 2d *Bastards* sections 60 and 62; 10 C.J.S. *Bastards* section 17b and 17c; Annot., 37 A.L.R. 2d 882 (1954); Annot., 51 A.L.R. 1507 (1927).

**Maurice A. Roberts, Chairman, Dissenting:**

I respectfully dissent. In my estimation, the Board has placed an unduly restrictive construction on the phrase "legal custody of the legitimating parent" in section 101(b)(1)(C). Such a narrow construction detracts from the ameliorative intent of Congress in enacting this remedial provision.

The term "legal custody" is not defined in the Act. The majority opinion refers to the Board's unpublished opinion in *Matter of Harris*, A18 953 024 (BIA November 6, 1970). In my dissenting opinion in that case, I pointed out that, while the legislative history of the requirement was sparse, "it is fairly inferable that the purpose of the 'legal custody' requirement was to prevent abuse through *ad hoc* legitimation by a putative father who had had little or no contact with the child and who had obtained the legitimation solely for the purpose of circumventing the immigration laws."

As I noted in *Harris*, Congress did not specify that a parent must have "actual custody" or "physical custody," or even "custody." It could be argued that the use of any of the preceding terms would have required the legitimating parent to have actual physical custody of the child at the time of legitimation. In my opinion, however, "legal custody" connotes the *legal* rights and responsibilities incident to parenthood. Such rights and responsibilities may exist either in conjunction with or independently from actual "physical custody." See e.g., *Burge* v. *City and County of San Francisco*, 41 Cal. 2d 608, 262 P.2d 6, 12–13 (1953); *Donnally* v. *Blankenstein*, 167 Cal. App. 2d 282, 334 P.2d 260, 262 (1959).

It has long been the view under the immigration laws that "legal custody" is separable from actual "physical custody." The two-year "legal custody" requirement for adoption under section 101(b)(1)(E) of the Act may be fulfilled even though the adoptive parents and their child have resided apart, in different countries separated by thousands of miles, during that period. *Matter of M—*, 8 I. & N. Dec. 118 (BIA 1958; AG 1959).

I have no quarrel with the majority's statement that the mother of an *illegitimate* child generally has a primary right to its custody (although I question whether this is necessarily a universal rule). That situation, however, is quite distinct from the one in which a father has *legitimated* his child. In my view, the act of legitimation, if it is bona fide and creates a legal status identical to that of a child born in wedlock, vests "legal custody" in the legitimating parent. See e.g., *In re Navarro*, 77 Cal. App. 2d 500, 175 P.2d 282, 334 P.2d 260, 263 (1959); 10 Am. Jur. 2d *Bastards* section 66; 10

C.J.S. *Bastards* sections 14 and 17c; cf. *In re Sutton,* 132 W. Va. 875, 53 S.E. 2d 839 (1949); *Allison* v. *Bryan,* 21 Okla. 557, 97 P. 282 (1908).

It has been recognized that when, due to legitimation, a child's status in relation to his father becomes that of a child born in wedlock, the right of the natural mother to *exclusive legal* custody is modified. See *In re Navarro, supra: Donnally* v. *Blankenstein, supra.* I deem this to be especially true in the present case, since, according to the Library of Congress, the law of Panama does not permit any classification based on legitimacy, and all children whose parentage has been established are legitimate and have an identical legal status in relation to their parents. Articles 58 and 59 of the Panamanian Constitution of 1946; Law 60 of 1946 (Panama); see *Matter of Sinclair,* 13 I.& N. Dec. 613 (BIA 1970). The mother may retain *physical* custody, but she no longer has the right to *exclusive legal* custody unless a court so decrees.

What the majority has done is to establish a very strong presumption that no father can be said to have "legal custody" of his legitimated child if the child's natural mother is still alive. Evidently, the majority would allow a father who has legitimated his child to rebut this presumption against legal custody at the time of legitimation only by showing that he obtained a court decree awarding "legal custody," or that "legal custody" vested in him by virtue of some "natural right," whatever the latter term may encompass. This view appears to ignore the legal effect of legitimation under the applicable domestic law, and tends to equate "legal custody" with "physical custody."

It is my opinion that "legal custody" vested in the petitioner at the time he legitimated the beneficiary in accordance with the law of Panama. The question remains whether the vesting of legal custody by the act of legitimation satisfied the requirement that the beneficiary be in the legal custody of the petitioner "at the time of such legitimation." I conclude that it did.

In making "legal custody" a requisite for legitimation under section 101(b)(1)(C), Congress must have contemplated the existence of some procedure by which a father who is acting in good faith could readily satisfy such a requirement. It seems to me that the primary way in which a putative father may go about regularizing his status and obtaining "legal custody" of his child is through the process of legitimation. To say that the vesting of legal custody at the time of legitimation is insufficient, and that the father must have established legal custody by another method *prior* to legitimation, would be inconsistent with the ameliorative intent of Congress in enacting section 101(b)(1)(C).

In similar situations involving adoptions under section 101(b)(1)(E) of the Act, both the Attorney General and this Board have stated that remedial legislation should be given a liberal interpretation so as to carry out the congressional intent. See *Matter of Y—K—W—*, 9 I. & N. Dec. 176 (AG 1961); *Matter of M—*, *supra*. The construction adopted by the majority, if consistently observed in all cases, would severely restrict the application of the remedial provisions of section 101(b)(1)(C).

The beneficiary was allegedly born as the result of a non-marital relationship between the petitioner and the beneficiary's mother. Shortly after the beneficiary's birth, the petitioner took all necessary steps to legitimate her under the law of Panama. The petitioner was personally present in Panama at the time of the beneficiary's birth, at the time of the legitimation, and for some years thereafter. Since the legitimation took place well in advance of the petitioner's entry into the United States for permanent residence, his action hardly appears to have been undertaken to obtain immigration benefits. According to the petitioner, he has supported the child since birth. I do not take the petitioner's submission to the wish of the beneficiary's mother not to have her leave Panama with the petitioner in 1965 as establishing that the mother had exclusive legal custody of the beneficiary at that date or at the time of legitimation.

In short, the petitioner took all necessary steps to establish the beneficary's status as his legitimated daughter under the applicable domestic law, years in advance of seeking immigration benefits. He has apparently always treated her as his daughter. We are not faced with a situation where an individual secures *ad hoc* legitimation of a child he has seldom or never seen, at a late date, in order to circumvent the immigration laws. Yet, in spite of the fact that the petitioner has done all that could reasonably be expected of him, immigration benefits are being denied because of the restrictive construction placed on the "legal custody" requirement of section 101(b)(1)(C). I do not believe that this is what Congress had in mind when it enacted that section.

I note that the "legal custody" requirement has been a part of section 101(b)(1)(C) since the inception of the Act in 1952. Despite that fact, there is to my knowledge no published case in which the Board has denied status under section 101(b)(1)(C) solely because of a failure to comply with the "legal custody" requirement. On the other hand, in several cases status has been granted to children legitimated under the applicable domestic law without apparent regard to "legal custody" as defined by the majority. See e.g., *Matter of K—*, 8 I. & N. Dec. 73 (BIA 1958); *Matter of G—*, 9 I. & N. Dec. 518 (BIA 1961); *Matter of Chojnowski*, 11 I. & N. Dec. 287 (BIA

1965); *Matter of Jancar*, 11 I. & N. Dec. 365 (BIA 1965); *Matter of DeF—*, 6 I & N. Dec. 325 (BIA 1954); *Matter of Palacio*, 11 I. & N. Dec. 183 (BIA 1965); *Matter of Pableo*, 12 I. & N. Dec. 503 (DD 1967); *Matter of Garcia*, 12 I. & N. Dec. 628 (BIA 1968); *Matter of B—*, 5 I. & N. Dec. 698 (BIA 1954); *Matter of D—M—*, 7 I. & N. Dec. 441 (BIA 1957).

Moreover, in some of these cases it is doubtful whether the fathers would have been able to meet the requirement laid down by the majority.

For example, in *Matter of K—*, *supra*, the beneficiary was born out of wedlock to the petitioner's fiancée in Poland in 1939. The petitioner left Poland for good when the beneficiary was three months old without having married the beneficiary's mother. He acknowledged the beneficiary in 1948 by sending a document to the Polish authorities while he was in England and the beneficiary was apparently still in Poland. The Board concluded that the requirements of the immigration law had been met and granted the petition. I submit that it is impossible to reconcile this result with the narrow view of "legal custody" which the Board is presently adopting.

In *Matter of Jancar*, *supra*, the petitioner acknowledged the beneficiary in Yogoslavia when the child was five months old. He then left Yugoslavia never to return. The Board held that the child became legitimated under Yugoslavian law when she was five months old. The issue of legal custody at the time of legitimation was never raised by the Board, despite the fact that the District Director had mentioned the legal custody requirement in his denial of the visa petition. Once again, it appears that the result is in conflict with the majority opinion.

I have merely cited several obvious examples in which the construction adopted by the majority conflicts with past decisions. The majority position seemingly would require the reversal of the results in such cases, where legitimated child status has heretofore been granted, if similar situations arise after today's decision.

It is my view that the petitioner has legitimated the beneficiary in accordance with the requirements of section 101(b)(1)(C) of the Act. Therefore, I would sustain the appeal and grant the petition.

**Louisa Wilson, Member Dissenting:**

I concur in the dissenting opinion of the Chairman, and would sustain the appeal and grant the petition.