**Felix David AMEZQUITA–SOTO,
Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 82–3354.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Feb. 18, 1983.

Decided May 31, 1983.

James M. Larsen, Passaic County Legal Aid Society, Paterson, N.J., for petitioner.

Lauri Steven Filppu, Arthur F. Norton, Donald B. Nicholson, Dept. of Justice, Crim. Div., Washington, D.C., Alexander Ewing, Jr., Asst. U.S. Atty., Philadelphia, Pa., for respondent.

Before GIBBONS, HUNTER and RO-SENN, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Petitioner Felix David Amezquita-Soto applied to the Immigration and Naturalization Service (the "Service") for suspension of deportation pursuant to section 244(a)(1) of the Immigration and Nationality Act of 1952 (the "Act"), 8 U.S.C. § 1254(a)(1) (1976 & Supp. V 1981). He now petitions for review of the order of the Board of Immigration Appeals (the "Board") affirming the denial of his application. We will deny the petition for review.

I

Petitioner is a citizen of Peru, having been born there in 1953. On April 21, 1972, petitioner entered the United States as a nonimmigrant student and attended high school for two years in Passaic, New Jersey. After his visa expired in 1974, petitioner remained in the United States illegally.

Petitioner met an American woman and lived with her for two and one-half years. In 1975 their daughter was born in Passaic. Petitioner acknowledged paternity on the birth certificate,[1] but he never married the child's mother. The mother eventually went to Pennsylvania, married, and ceased to have any contact with petitioner or their child.

Petitioner's daughter has been raised since birth by her maternal grandmother. The child continues to live with her grandmother in Passaic, while petitioner lives with his sister a few blocks away. Despite their proximity petitioner visits his daughter only on weekends and sometimes during the week if the grandmother has other plans. Although he has produced no evidence of the extent of his contribution, petitioner apparently helps to support the child. The immigration judge found "great love and attachment" between them. Certified Administrative Record at 20 ("Cert. Admin.Rec.").

On July 13, 1979, the Service notified petitioner that because he had overstayed his visa he was subject to deportation under section 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2) (1976). Petitioner conceded his deportability but requested a suspension of his deportation pursuant to section 244(a)(1).[2] In his application petitioner al-

---

1. In addition, the Juvenile Domestic Relations Court of Passaic County apparently has adjudicated petitioner to be the child's father.

2. Section 244(a)(1) reads in pertinent part:

(a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of a [de-

leged that his deportation would result in extreme hardship to himself and to his citizen child.[3]

On December 17, 1979, an immigration judge held a deportation hearing pursuant to section 242(b) of the Act, 8 U.S.C. § 1252(b) (1976 & Supp. V 1981). Petitioner introduced evidence of his continuous presence in the United States, and of his good moral character. Petitioner also testified that he would suffer extreme hardship if deported because he would choose to leave his daughter behind and would miss her very much.[4]

Petitioner also contended that his citizen child would suffer extreme hardship. Both he and the grandmother testified that petitioner visited and supported his daughter, and both felt that the child would greatly miss petitioner. The Service argued, however, that the immigration judge could not consider the hardship to petitioner's daughter because she is illegitimate under the laws of New Jersey and therefore is not his "child" within the meaning of section 244(a)(1).[5] Petitioner urged in response that New Jersey no longer makes any distinction between legitimate and illegitimate

children, and that his daughter must therefore be considered legitimate under *Chin Lau v. Kiley,* 563 F.2d 543 (7th Cir.1977).

The immigration judge found that the petitioner had been continuously present in the United States for over seven years, and was of good moral character. Turning to the issue of extreme hardship, the judge decided that he could consider the hardship to petitioner's daughter, saying:

I have entertained respondent's applications regarding the status of the child. I do not feel that this is an issue before this court at this time whether the child is legitimate or illegitimate. The only issue before me is whether the respondent has established the extreme hardship.

Cert.Admin.Rec. at 21. The judge then looked at the facts to see if either petitioner or his child would suffer extreme hardship. The judge acknowledged that petitioner would be separated from his daughter for some time,[6] and that separation might bring some deprivations. The judge emphasized, however, that "[t]he child has lived with her grandmother since birth" and that she "is being cared for by her grandmother at this time." Cert.Admin.Rec. at 22. He conse-

---

portable] alien ... who applies to the Attorney General for suspension of deportation and—

(1) ... has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States

....

8 U.S.C. § 1254(a)(1) (1976 & Supp. V 1981).

3. Petitioner also alleged that he could not return to Peru without fear of persecution because he had not served in the Peruvian military. Petitioner, however, did not invoke section 243(h) of the Act, 8 U.S.C. § 1253(h) (Supp. III 1979) (current version at Supp. IV 1980), which permitted the Attorney General to withhold the deportation of an alien who would be persecuted in the country of deportation.

4. Petitioner also testified that he would miss the United States, and that his family in Peru had told him that jobs were hard to find there.

5. The word "child" in § 244(a)(1) is defined in § 101(b)(1) of the Act, which states in pertinent part:

The term "child" means an unmarried person under twenty-one years of age who is—
(A) a legitimate child;

. . . . .

(C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

8 U.S.C. § 1101(b)(1) (Supp. V 1981).

6. The immigration judge noted that petitioner might be able to return to the United States in the future because petitioner's sister in Passaic would be eligible for naturalization in 1980 and could then file a visa petition on his behalf. We note that the record does not indicate whether such a petition has been filed.

quently found that petitioner had failed to show that either he or his daughter would suffer extreme hardship.[7] The judge therefore held that petitioner was not eligible for suspension of deportation under section 244(a)(1). He denied petitioner's application but granted him the right of voluntary departure within sixty days.

Petitioner appealed to the Board of Immigration Appeals, claiming that both he and his child would suffer extreme hardship if he were deported. In his brief petitioner asserted that the hardship to his daughter had to be considered even though she had been born out of wedlock. In addition he argued that the immigration judge had failed to give adequate weight to the emotional impact of separation in determining whether either he or his daughter would suffer extreme hardship.[8] The Service did not file a brief in opposition.

The Board agreed with the immigration judge's finding that petitioner had not shown extreme hardship to himself or to his daughter. At the outset the Board pointed out that any possible hardship to petitioner's daughter could not be considered because she was not his "child" within the meaning of section 244(a)(1). Finding that under New Jersey law a child born out of wedlock could be legitimized only by the subsequent marriage of her parents, *see* N.J.Stat.Ann. § 9:15–1 (West 1976), the Board noted that it was powerless to alter the terms and conditions set by Congress. The Board then stated:

> Even assuming, arguendo, that the effect of [petitioner's] deportation on this child could be considered, we conclude that [petitioner] has failed to establish that she would suffer extreme hardship to make him statutorily eligible for suspension of deportation. Although the child may know [petitioner] as her father,

she has been residing with her maternal grandmother who cares for her on a daily basis. While the child may have to adjust to not seeing [petitioner] on weekends, we are not convinced that his return to Peru would amount to the degree of hardship contemplated under section 244(a)(1) of the Act. In contrast to the child in *Tovar v. INS*, 612 F.2d 794 (3d Cir.1980), who had been raised since infancy by the applicant for suspension and who would not have had any other family members to care for him upon the deportation of the applicant, [petitioner's] daughter has been raised by her grandmother with whom she is familiar and may remain without a drastic change in her circumstances. We do not believe that Congress intended to suspend the deportation of any alien whose child may experience some difficulty from the separation, but who has been raised by and could remain with a close family member familiar to the child.

Cert.Admin.Rec. at 4.

The Board also concluded that petitioner had not shown that because of his separation from the child he would suffer extreme hardship within the meaning of section 244(a)(1):

> [Petitioner's] contact with the child has been limited to his weekend visits at her grandmother's home, notwithstanding the fact that he lives only two blocks away from her. We do not find that these weekend visits and the sporadic visits between [petitioner] and the child during the week demonstrates deep affection which, if eliminated, would cause [petitioner] to suffer extreme hardship. *Compare Bastidas v. INS*, 609 F.2d 101 (3d Cir.1979).

Cert.Admin.Rec. at 5. Considering all the evidence presented,[9] the Board concluded

---

**7.** The immigration judge also stated that economic deprivation, such as alleged by petitioner, was not in itself sufficient to establish extreme hardship.

**8.** Petitioner also argued that the immigration judge failed to give adequate weight to petition-

er's cultural attachment to the United States and to the difficulty of finding work in Peru.

**9.** The Board also considered petitioner's alleged economic and cultural difficulties. First, it stated that the social and cultural adjustments anticipated by petitioner were common to most aliens who had spent seven or more years in

that petitioner had failed to establish extreme hardship and therefore was not eligible for suspension of deportation. It dismissed petitioner's appeal on July 29, 1982.

Petitioner then filed this petition for review. We have jurisdiction over the petition pursuant to section 106(a) of the Act, 8 U.S.C. § 1105a(a) (1976 & Supp. V 1981). *Bastidas v. INS,* 609 F.2d 101, 103 & n. 2 (3d Cir.1979).

## II

■ Petitioner makes two arguments on appeal. First, he cites New Jersey statutes giving an illegitimate child the right to education, support and inheritance from his acknowledged father, and argues that his daughter is therefore his "child" within the meaning of section 244(a)(1). Second, petitioner contends that the Board gave inadequate consideration to the hardship which both he and his child would suffer should they be separated. We need not consider petitioner's first argument. Even if petitioner's daughter is his "child" under the Act, and the hardship to her is considered, we hold that the Board did not abuse its discretion by holding that petitioner has failed to prove that either he or his child would suffer extreme hardship if he is deported.

Section 244(a)(1) authorizes the Attorney General and his delegates,[10] in their discretion, to suspend the deportation of an eligible alien. Before an alien can be eligible for such relief, he must establish that he satisfies the three prerequisites set forth in section 244(a)(1). First, the alien must show continuous physical presence in the United States for at least seven years preceding the application. Second, he must prove that during that period he was a person of good moral character. Finally, the alien must prove facts which, in the

opinion of the Attorney General, establish that his deportation would result in extreme hardship to himself or to "his spouse, parent, or child, who is a citizen of the United States." 8 U.S.C. § 1254(a)(1) (1976 & Supp. V 1981); *Tovar v. INS,* 612 F.2d 794, 796–97 (3d Cir.1980).

■ The Supreme Court has recently emphasized that the courts should not encroach upon the authority of the immigration judges and the Board to determine what constitutes "extreme hardship:"

> These words are not self-explanatory, and reasonable men could easily differ as to their construction. But the Act commits their definition in the first instance to the Attorney General and his delegates, and their construction and application of this standard should not be overturned by a reviewing court simply because it may prefer another interpretation of the statute.

*INS v. Jong Ha Wang,* 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (per curiam); *see Ravancho v. INS,* 658 F.2d 169, 176 (3d Cir.1981). The Court stressed that the immigration judges and the Board "have the authority to construe 'extreme hardship' narrowly should they deem it wise to do so." *Jong Ha Wang,* 450 U.S. at 145, 101 S.Ct. at 1031. Indeed, the Court indicated that a narrow interpretation was consistent with the "extreme hardship" language and also with "the exceptional nature of the suspension remedy." *Id.*

■ Our scope of review thus is limited. The findings of fact of the immigration judge and Board are conclusive "if supported by reasonable, substantial, and probative evidence on the record as a whole." 8 U.S.C. § 1105a(a)(4) (1976); *see Tovar,* 612 F.2d at 797. Their determination whether an alien has proven extreme hard-

the United States. Second, it said that it was not convinced that petitioner could not find employment in Peru. The Board also noted that petitioner's father and most of his siblings resided in that country.

**10.** The Attorney General has delegated his authority under § 244(a)(1) to special inquiry offi-

cers (here, the immigration judge) whose decisions are subject to review by the Board of Immigration Appeals. *INS v. Jong Ha Wang,* 450 U.S. 139, 140 n. 2, 101 S.Ct. 1027, 1029 n. 2, 67 L.Ed.2d 123 (1981) (per curiam); *Bastidas,* 609 F.2d at 103 n. 1.

ship, however, is discretionary in nature and "will be overturned only if arbitrary, irrational or contrary to law." *So Chun Chung v. INS,* 602 F.2d 608, 611–12 (3d Cir.1979); *accord Ramos v. INS,* 695 F.2d 181, 185 (5th Cir.1983); *Buena-Carrillo v. Landon,* 682 F.2d 143, 145 (7th Cir.1982); *Gomez-Gomez v. INS,* 681 F.2d 1347, 1348–49 (11th Cir. 1982); *Mejia-Carrillo v. INS,* 656 F.2d 520, 522 (9th Cir.1981).[11]

In this case the immigration judge and the Board chose to construe "extreme hardship" narrowly. Although they recognized that petitioner's daughter would experience some deprivations, both stressed that the child had been raised since birth by her grandmother and was still cared for by her. Given such circumstances, the immigration judge in his discretion found no extreme hardship within the contemplation of the statute. The Board agreed, saying that it did not believe that Congress intended to render eligible for suspension of deportation any alien with a child in such circumstances.

We have stated that "we view the separation of family members from one another as a serious matter requiring close and careful scrutiny." *Bastidas,* 609 F.2d at 105. As the Supreme Court has reminded us, however, it is within the province of the immigration judge and the Board to construe "extreme hardship" narrowly. *See Barrera-Leyva v. INS,* 653 F.2d 379, 380 (9th Cir.1981) (per curiam) (applying *Jong Ha Wang*). The fact that petitioner's child has been raised and can be cared for by a close family member does suggest that the hardship to both the child and to petitioner will be substantially less severe than if petitioner had raised the child and alone could care for her, *see Tovar.* We cannot say, there-fore, that the construction of "extreme hardship" adopted by the immigration judge and by the Board constitutes an abuse of their discretion.

Petitioner contends that this case is factually and legally indistinguishable from *Bastidas.* In that case the petitioner alleged that his deportation would separate him from his son, who was in the custody of his estranged wife. We held that

> where a father expresses deep affection for his child and where the record demonstrates that his actions are consistent with and supportive of his expression of affection, a finding of no extreme hardship will not be affirmed by this court unless the reasons for such a finding are made clear.

609 F.2d at 105. Because in *Bastidas* the opinion of the special inquiry officer was silent regarding the non-economic, emotional hardship that would result from the separation of father and son, we found that the officer had given inadequate consideration to such hardship and remanded the case for further proceedings. *See Mejia-Carrillo,* 656 F.2d at 522–23.

The instant case differs from *Bastidas* both in its facts and in the consideration given the facts by the Board and the immigration judge. It is true that, like the petitioner in *Bastidas,* petitioner expressed deep affection for his daughter, visited her, and provided her with some financial support. Unlike the petitioner in *Bastidas,* however, petitioner has had the opportunity to adopt or obtain custody of the child. He has not done so. Instead, petitioner chose not to have his daughter live with him and allowed her to be raised since birth solely by her grandmother.[12] Petitioner's actions

---

**11.** In *Tovar,* 612 F.2d at 798, and *Bastidas,* 609 F.2d at 104, we stated that the determination that an alien has established extreme hardship must be supported by substantial evidence. In both cases, however, we held only that the Board or special inquiry officer had given insufficient consideration to the facts indicating extreme hardship, and our language should be read accordingly. To the extent that our opinions suggest that the existence of extreme hardship is not a matter of discretion but an issue of fact, they are inconsistent with *Jong Ha Wang* as well as with *So Chun Chung. See Ramos,* 695 F.2d at 185.

**12.** In his brief petitioner alleges for the first time that his daughter has now come to live with him. Brief on Behalf of Petitioner at 19. Our review can be based "solely upon the administrative record upon which the deportation order is based." 8 U.S.C. § 1105a(a)(4) (1976); *see Tovar,* 612 F.2d at 797. New evidence

thus have not been entirely consistent with and supportive of his expression of affection.

Unlike the special inquiry officer in *Bastidas,* moreover, the Board and the immigration judge did not ignore petitioner's evidence of emotional hardship. Both discussed petitioner's evidence at length, and both made clear the reason for their conclusion that neither petitioner nor his daughter would suffer extreme hardship—that the grandmother had raised and could care for the child. After examining their opinions and the transcript of the deportation hearing, we find that they gave sufficient consideration to the emotional hardship that would result from petitioner's deportation.

### III

Petitioner asserts that we should nonetheless reject the Board's finding that his child will not suffer extreme hardship. He points out that the finding was made arguendo after the Board had decided that it was precluded from considering his daughter's hardship because she was not his "child" under the Act. Petitioner contends that there is, therefore, a very real possibility that the Board made a less than full evaluation of the child's hardship. Citing our decision in *Tovar,* he urges us to remand the case to the Board for a fresh determination of the hardship to his daughter.

In *Tovar,* the Board had incorrectly concluded that a grandchild raised by the petitioner was not her "child" within the meaning of section 244(a)(1). The Board had then "summarily" stated: "assuming arguendo that the effect of the [petitioner's] deportation on this child could be considered, the testimony of his mother at the deportation (hearing) indicated that the adjustment probably would not be severe." 612 F.2d at 798. Our review of the hearing transcript led us to conclude that the testimony did not support the inference drawn by the Board, and we were consequently concerned that the Board's erroneous view of the law had caused it to undertake a

must be brought in the first instance before the

less-than-full evaluation of the child's hardship. Accordingly, we remanded the case so that the Board could determine the child's hardship with the knowledge that it was legally relevant. *Id.* at 798–99.

In this case the Board's consideration of the child's hardship, though made arguendo, was hardly summary. The Board considered the hardship to petitioner's daughter which the loss of petitioner's visits would entail, and it contrasted that loss with the threatened deportation in *Tovar* of the child's grandmother, who had raised him and who alone was available to care for him. The Board found that petitioner's daughter could remain with her grandmother without a significant change in circumstances and concluded that the child would not suffer extreme hardship. The Board thus reached the same conclusion as the immigration judge, who had not determined that petitioner's daughter was not his "child" under the Act. Considering the record as a whole, we find that there is reasonable, substantial and probative evidence supporting the Board's conclusion.

We did not hold in Tovar that the Board could not reach alternative holdings. We held only that it could not render such holdings summarily based on inferences not supported by the record. We are not faced with such an off-hand finding in this case. We are confident that the Board made a full determination initially, and that there is nothing that remains for the Board to consider. We therefore conclude that the remand requested by petitioner is unnecessary.

### IV

The petition for review will be denied.

GIBBONS, Circuit Judge, dissenting.

Felix David Amezquita-Soto appeals from an order by the Board of Immigration Appeals upholding the immigration judge's denial of petitioner's application for suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act, 8

Board.

U.S.C. § 1254(a)(1) (1976). I would vacate the order and remand the case for reconsideration.

## I.

Mr. Amezquita was born in Peru on May 10, 1953. On April 12, 1972 at age eighteen he came to the United States on a student visa. After studying for two years at Passaic High School, he met Ms. Poshinski, with whom he lived for two and a half years. In 1975 they had a child, Michelle Lee Ann Amezquita. Mr. Amezquita and Ms. Poshinski never married, and she subsequently married someone else and moved to Philadelphia. Mr. Amezquita stayed in Passaic, where his child lived with her grandmother, Mildred Poshinski.

On July 13, 1979 the Immigration and Naturalization Service (INS) sent Mr. Amezquita an Order to Show Cause, which alleged that he was deportable under section 241(a)(2) of the Immigration and Nationality Act because his student visa had expired. Immigration Judge Nathan W. Gordon held a deportation hearing in Newark, New Jersey on December 17, 1979. At the hearing, Mr. Amezquita admitted that he was deportable, but asked the judge to suspend deportation or grant voluntary departure. He contended that his child, who was a qualifying family member under section 244(a)(1) of the Act, would suffer extreme hardship if he was deported. Mr. Amezquita presented a birth certificate for Michelle Lee Ann Amezquita which indicated that he was her father. He also presented evidence that the Juvenile Domestic Relations Court of Passaic County had adjudicated him to be the child's father. According to the testimony of Mr. Amezquita and Mildred Poshinski, Mr. Amezquita lived in Passaic with his sister and visited his daughter on weekends and during the week. The child was dependent upon Mr. Amezquita; he supported the child and provided Mildred Poshinski with anything that she needed for the baby. The mother had no contact with the child. The immigration judge also found that there is great love and attachment between Mr. Amezquita and his daughter.

In an oral decision the immigration judge held that Mr. Amezquita was deportable for the grounds set forth in the Order to Show Cause. He concluded that extreme hardship had not been established by the separation of Mr. Amezquita from his daughter and denied Mr. Amezquita's application for suspension of deportation. Finding it unnecessary to reach the issue of whether the child was legitimate or illegitimate, the judge held that the child would suffer no hardship because she would continue to be cared for by her grandmother. He also suggested that Mr. Amezquita might get relief in the future, when his sister, who was eligible for naturalization in 1980, could become a citizen and file a petition in his favor. The judge granted Mr. Amezquita's application for voluntary departure, with deportation following if he did not leave within sixty days.

Mr. Amezquita appealed to the Board of Immigration Appeals (the Board) in December of 1979. He argued that the immigration judge had failed to give adequate consideration to the hardship father and daughter would suffer due to the separation. Under New Jersey law, he contended, illegitimate children are treated the same as legitimates and thus should be similarly treated for purposes of immigration law. The Board of Immigration Appeals held that Mr. Amezquita's daughter does not qualify as a "child" within the meaning of section 101(b)(1) of the Act, 8 U.S.C. § 1101(b)(1), because she was illegitimate and had not been legitimated by marriage. Any hardship to Amezquita's daughter could therefore not be a factor in determining hardship under section 244(a)(1). The Board also found that even if such hardship could be considered, the child would not suffer extreme hardship sufficient to make petitioner statutorily eligible for suspension of deportation because she could continue to live with her maternal grandmother.

## II.

Section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1) (1976)

(the Act), permits discretionary relief from deportation where the alien is deportable, has been physically present in the United States at least seven years immediately preceding the date of application for suspension of deportation, is a person of good moral character, and is a person whose deportation would "result in extreme hardship to the alien or to his spouse, parent, or child . . . ."[1] The term "child" is defined in part as

an unmarried person under twenty-one years of age who is—

(A) a legitimate child; or

. . . . .

(C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

8 U.S.C. § 1101(b)(1) (1976 & Supp. V 1981). There is no dispute that Mr. Amezquita meets the physical presence and moral character requirements. The question here is whether Mr. Amezquita's daughter is a "child" in the meaning of the statute under New Jersey law such that extreme hardship concerning her could be the basis to suspend Mr. Amezquita's deportation. Our review of questions of law, including statutory construction and interpretation, is plenary. 5 U.S.C. § 706 (1976); *Tovar v. Immigra-*

*tion and Naturalization Service,* 612 F.2d 794, 797 (3d Cir.1980).

Under New Jersey law, a child born out of wedlock is not legitimated unless her parents subsequently marry. N.J.Stat.Ann. 9:15–1 (West 1976).[2] This does not, however, resolve the question whether Mr. Amezquita's daughter is a "child," because the Board had indicated that legitimacy may also be found when the law of the relevant domicile draws no distinctions between the treatment of legitimate and illegitimate children:

The term "legitimate" as used in section 101(b)(1)(A) normally refers to a child born in wedlock. *See Matter of James,* 15 I & N Dec. 544 (BIA 1975); *Matter of Dela Rose,* 14 I & N Dec. 728 (BIA 1974); *Matter of Kubicka,* 14 I & N Dec. 303 (BIA 1972). However, when the country where the beneficiary was born and resides eliminates all legal distinctions between legitimate and illegitimate children, all natural children are deemed to be the legitimate or legitimated offspring of their natural father from the time that country's laws are changed. *See Chin Lau v. Kiley,* 563 F.2d 543 (2 Cir.1977); *Matter of Sanchez,* 16 I & N Dec. 671 (BIA 1979); *Matter of Wong,* 16 I & N Dec. 646 (BIA 1978). The test we have applied for preference immigration purposes is equality of filial rights when compared with those of children born in wedlock. *Compare Matter of Sanchez, supra,* with *Matter of Clahar,* 16 I & N Dec. 484 (BIA 1978); *Matter of Reyes,* 16 I & N Dec. 475 (BIA 1978).

---

1. Section 244(a)(1) of the Act provides:

   (a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

   (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation

would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence. . . .

2. N.J.Stat.Ann. 9:15–1 states:

   Any child heretofore or hereafter born out of wedlock shall be legitimated by the intermarriage of his natural parents and their recognition and treatment of him as their child. A child so legitimated is entitled to all rights and privileges which he would have enjoyed had he been born after the marriage, his status being the same as if he were born in lawful wedlock.

*Matter of Hernandez,* 17 I. & N. Dec. 7, 8 (1979).

In New Jersey the courts and legislature have eliminated legal distinctions between legitimate and illegitimate children where the natural father admits paternity. The New Jersey Superior Court recognizes that "[d]istinctions affecting the substantial rights of either a child or its natural parents based upon the illegitimate status of the child have been held to be violative of the [Constitution]." *E v. T,* 124 N.J.Super. 535, 543, 308 A.2d 41, 45 (Ch.Div.1973); *see also Matter of Adoption of B,* 152 N.J.Super. 546, 549, 378 A.2d 90, 91 (Union Cty.Ct. 1977). The New Jersey statute which allowed an illegitimate child to inherit from its mother but not its father, N.J.Stat.Ann. 3A:4–7 (West 1953),[3] was repealed in 1977 after the New Jersey Superior Court held that where paternity is shown all illegitimate children have the same right to in-

testate inheritance from their parents as legitimate children. *Matter of Estate of Sharp,* 163 N.J.Super. 148, 151, 394 A.2d 381, 382 (App.Div.1978). Under the recodified statute effective May 1, 1982, a child born out of wedlock has a right to inherit from the father once paternity is established.[4]

Similarly, legitimate and illegitimate children are treated the same with regard to support and education, N.J.Stat.Ann. 9:16–2 (West 1976),[5] and custody and visitation for the father whose parenthood has been established. N.J.Stat.Ann. 9:16–1 (West 1976);[6] *see also E v. T,* 124 N.J.Super. 535, 543, 308 A.2d 41, 45 (Ch.Div.1973); *R v. F,* 113 N.J.Super. 396, 408, 273 A.2d 808, 814 (Juv. & Dom.Rel.Ct.1971) (where father admits paternity, statute excluding putative father from custody or control of illegitimate child is not applicable). Thus, where, as here, paternity has been acknowledged by the father and even adjudicated by a domestic

**3.** N.J.Stat.Ann. 3A:4–7 (West 1953) read as follows:

For the purpose of descent and distribution under this chapter to, through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his mother, so that he and his issue shall inherit and take from his mother and from his maternal kindred, including his maternal ancestors, descendants and collaterals; and they, from him and his issue. When parents of an illegitimate child shall marry subsequent to his birth and recognize and treat him as their child, such child shall be deemed to have been made the legitimate child of both of his parents for the purpose of descent and distribution to, through and from him under this chapter.

**4.** N.J.Stat.Ann. 3B:5–10 (West 1983) reads as follows:

If, for the purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through or from a person, a child born out of wedlock is a child of the mother. That child is also a child of the father, if:

a. The natural parents, before or after the birth of the child, participated in a ceremonial marriage or shall have consummated a common-law marriage where the marriage is recognized as valid in the manner authorized by the law of the place where the marriage took place, even though the attempted marriage is void; or

b. The paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof, except that the paternity established under this subsection is ineffective to qualify the father or his kindred to inherit from or through the child unless the father has openly treated the child as his, and has not refused to support the child.

**5.** N.J.Stat.Ann. 9:16–2 reads:

A child born out of wedlock shall be entitled to support and education from its father and mother to the same extent as if born in lawful wedlock.

**6.** N.J.Stat.Ann. 9:16–1 states:

The mother of an illegitimate child, whether married or single, shall have the exclusive right to its custody and control and the putative father of such child shall have no right of custody, control or access to such child without the mother's consent. If, however, it is proved that the mother is unfit to have the custody and control of such child, the Superior Court or any other court which may have jurisdiction in the premises may make any order touching the custody or control of such child which might heretofore have been made.

This section is intended to be declaratory of the existing law upon this subject and it shall, under no circumstances, be construed as an implication that the rights of such a mother have hitherto been less than as herein above defined.

relations court, New Jersey law provides for equality of filial rights between children born in and out of wedlock. Therefore, the daughter is "legitimate" and a "child" whose hardship must be considered in this petition to suspend deportation.

The Board's reliance on the child's illegitimacy was a legal error. Because its exercise of discretion was colored at least in part by its erroneous view as to the significance of illegitimacy, at the very least a remand is appropriate for reconsideration of the father's application. We should not hold that the Board's exercise of discretion would be the same had it properly understood New Jersey law.

### III.

Despite its finding that it could not as a matter of law consider the hardship to petitioner's daughter, the Board went on to state that the hardship was insufficient to justify suspension of deportation. The Board reasoned that hardship was minimized by the fact that the maternal grandmother could take care of the daughter. However, *Bastidas v. Immigration & Naturalization Service,* 609 F.2d 101 (3d Cir. 1979), teaches that such considerations are not pertinent in making hardship determinations. In *Bastidas* we said:

> The family and relationships between family members occupy a place of central importance in our nation's history and are a fundamental part of the values which underlie our society. *See Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Accordingly, we view the separation of family members from one another as a serious matter requiring close and careful scrutiny. Although we do not go so far as to hold that the separation of a father from his child is, as a matter of law, extreme hardship for purposes of § 244(a)(1), we do hold that where a father expresses deep affection for his child and where the record demonstrates that his actions are consistent with and supportive of his expression of affection, a finding of no extreme hardship will not be affirmed by this

court unless the reasons for such a finding are made clear.

*Id.* at 105. The Board must make a fresh determination of hardship which reflects consideration of the importance of the separation of family members from each other and the emotional hardship which such separation causes. *See id.; see also Tovar v. Immigration and Naturalization Service,* 612 F.2d 794, 798–99 (3d Cir.1980) (fresh determination of hardship required where Board's conclusion that insufficient hardship existed may have been colored by erroneous legal conclusion that hardship to grandchild could not be considered).

The majority attempts, unconvincingly, to "distinguish" *Tovar* and *Bastidas,* on the basis of the child's residence with a maternal grandmother. The majority's reliance on that factor demonstrates just how far removed federal appellate judges are from the day to day problems of lower income single parents. The majority opinion permits the Board to attach legal significance to the fact that a single working parent, having great attachment to his child, has chosen to rely upon a maternal grandparent for child care instead of attempting the extremely difficult task of maintaining a home for her and at the same time providing for infant day care during working hours. Safe and competent infant day care is both difficult to find and costly. For most single parents among the working poor there is no real alternative for child care other than reliance upon the voluntary assistance of a willing relative. Reliance upon this patent necessity to deprive the child as a matter of law of the protection Congress intended in section 244(a)(1) is an example of judicial heartlessness.

### IV.

Accordingly, I would vacate the order denying suspension of deportation and remand the case to the Board of Immigration Appeals for reconsideration of the extreme hardship claim.